1   Peter H. Klee, State Bar No. 111707
        E-mail: pklee@luce.com
2   John D. Edson, State Bar No. 185709
        E-mail: jedson@luce.com
3   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
    600 West Broadway, Suite 2600
4   San Diego, California 92101-3372
    Telephone No.: 619.236.1414
5   Fax No.: 619.645.5376

6   Attorneys for Defendant
    Allstate Insurance Company

7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10              **ED CV 09 - 01694**  SGL (OPx)

11  ARTEMIO MELENDEZ,                  Case No.

12          Plaintiff,                 **NOTICE OF REMOVAL OF CIVIL
                                       ACTION**
13  vs.

14  ALLSTATE INSURANCE CO  and
    DOES 1 to 10
15
           Defendant.
16

17      **TO THE JUDGES OF THE UNITED STATES DISTRICT COURT**

18  **FOR THE CENTRAL DISTRICT OF CALIFORNIA – EASTERN DISTRICT**

19  **AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

20      **PLEASE TAKE NOTICE** that, under 28 U.S.C. Sections 1441(b) and 1446,

21  defendant Allstate Insurance Company ("Allstate") hereby removes this action from

22  the Superior Court of the State of California for the County of Riverside and submits

23  the following statement of facts, which entitles it to removal:

24      1.      On August 4, 2009, plaintiff Artemio Melendez filed a lawsuit against

25  Allstate in the Superior Court of the State of California, for the County of Riverside,

26  entitled Artemio Melendez v. Allstate Insurance Company and DOES 1 TO 10,

27  Superior Court Case No. RIC 532764.  Allstate was served with a copy of the

28  complaint and summons on or about August 6, 2009.  (**Complaint, Exhibit A.**)

1

2.      Allstate is, and was at the commencement of the state court action, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Cook County, Illinois.  Thus, Allstate is, and was at the commencement of the state court action and at the time of removal, a resident and citizen of the state of Illinois, as well as the United States.  Allstate does not have substantial predominance of its corporate activities in the State of California.  The majority of its executive and administrative functions are performed in Northbrook, Illinois.

3.      Allstate is informed and believes that the named plaintiff is, and was at the commencement of the state court action and at the time of removal, a resident and citizen of the State of California, as well as the United States.  There is no indication that plaintiff is or was a citizen of Illinois, the only fact that would destroy diversity of citizenship in this case.

4.      Disregarding all the "Doe" defendants, the only remaining defendant is Allstate.  Complete diversity exists between Allstate and the plaintiff, Artemio Melendez.

5.      Thus, this action satisfies the diversity requirements of 29 U.S.C. § 1332(d).

6.      Plaintiff's complaint alleges breach of contract, insurance bad faith and punitive damages arising from fire and damage to properties located at 9913 and 9915 Mission Boulevard, Riverside, California.  Plaintiff alleges that "his general damages in the additional sum of $500,000.00 and special damages in amount of $100,000."  (Complaint, ¶ 35 , **Exhibit A**.)

7.      Plaintiff also seeks the following additional damages:

a.      Punitive damages.  (Complaint ¶ 39, **Exhibit A**.)  Punitive damages are included in determining whether the amount in controversy requirement has been met.  Green v. Party City Corporation, 2002 U.S. Dist. Lexis 7750; Bell v. Preferred Life Society, 320 U.S. 238, 240, 64 S.Ct. 5, 6 (1943);

1   Richmond v. Allstate Ins. Co., 897 F. Supp. 447 (S.D. Cal. 1995) Physicians Health

2   Plan v. Citizens Ins. Co., 673 F. Supp. 903, 910 (W.D. Mich. 1987); Dembrowski v.

3   Allstate Ins. Co., 1992 U.S. Dist. LEXIS 3282 (E.D. Pa. 1992).

4            b.      Attorneys' fees.  (Complaint, ¶ 33, **Exhibit A**.)  A claim for

5   attorneys' fees is also included in determining the amount in controversy.

6   Goldberg v. CPC Int'l, Inc., 678 F.2d 1365 (9th Cir. 1982).

7        8.      Based upon the foregoing, this action is a civil action over which this

8   court has original jurisdiction under the provisions of 28 U.S.C. Section 1332, and is

9   one that may be removed to this court by State Farm under 28 U.S.C.

10  Section 1441(b), in that it is a civil action wherein the matter in controversy exceeds

11  the sum of $75,000, exclusive of interest and costs, and is between citizens of

12  different states.

13       9.      Copies of additional pleadings that have been filed in the state court

14  action are attached hereto as **Exhibit B**.

15       **WHEREFORE**, Allstate prays that the state court action now pending

16  against it in the Superior Court of the State of California for the County of Riverside

17  be removed therefrom to this United States District Court for the Central District of

18  California – Eastern Division.

19

20  DATED:  September **4**, 2009  LUCE, FORWARD, HAMILTON & SCRIPPS LLP

21

22       By: _John Edson_____

23          John D. Edson
           Attorneys for Defendant
24         Allstate Insurance Company

25  101182951.1

26

27

28

3

# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Allstate Insurance Company

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 04 2009

I. SIRACUSA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Artemio Melendez.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court, County of Riverside<br>4050 Main Street<br><br>Riverside, CA 92501 | CASE NUMBER:<br>*(Número del Caso):*<br>RIC 532764 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
GREGORY D ANGUS                              (951) 781-6555
GREGORY D. ANGUS , SBN 210327
4298 Orange Street
RIVERSIDE, CA 92501

DATE: AUG 0 4 2009          Clerk, by _____ I. Siracusa _____, Deputy
*(Fecha)*                   *(Secretario)*                                   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* *Allstate Insurance Company*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* *8-6-09   2:12*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions & Plus

Code of Civil Procedure §§ 412.20, 465

**PAGE 4**

1 | Gregory D. Angus    SBN 210327
2 | Attorney at Law
  | 4298 Orange Street
3 | Riverside, Ca 92501
  | Telephone: (951) 781-6555
4 | Facsimile: (951) 781-6550



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 04 2009

J. SIRACUSA

5 | Attorney for Plaintiff: Artemio Melendez

6

7

8 |                SUPERIOR COURT OF CALIFORNIA

9 |             IN AND FOR THE COUNTY OF RIVERSIDE

10 | Artemio Melendez,              ) Case No.: RIC 532764
                                   )
11 |         PLAINTIFF,            ) COMPLAINT FOR BREACH OF
                                   ) CONTRACT, INSURANCE BAD FAITH,
12 |         VS.                   ) PUNITIVE DAMAGES
                                   )
13 | Allstate Insurance Co AND DOES )
                                   ) UNLIMITED CIVIL
14 | 1 TO 10                       )
                                   )
15 |         DEFENDANT,            )
                                   )
16 | _____ )

17

18 | Plaintiff alleges

19 |                   GENERAL ALLEGATIONS

20 |   1. Defendant provides the homeowners insurance policy for the

21 |      plaintiffs primary residence. The policy attached as

22 |      exhibit A provides for coverage for damage resulting from

23 |      fire and damage. The policy also provides for damage to

24 |      personal property and additional living expenses that are

25 |      incurred when the home is unlivable resulting from a

26 |      covered loss.

27

28

Melendez v. Allstate COMPANY PAGE 1 OF 12

2. The defendant owns a property with two separate structures on it. 9913 and 9915 Mission Blvd. The defendant had two losses at his property one on July 26, 2006 a truck traveling on Mission Blvd collided with 9913. Causing in excess of 130,000 in damage. On July 30 2007 there was a fire in 9915 causing approximately $120,000 in damage. Immediately upon discovery of the fire plaintiff called their insurance company to report the claim.

3. On August 8, 2008 Allstate denied the fire claim and on August 18, 2008 Allstate denied the balance of the truck Vs house claim.

4. The policy also provides additional living expenses/ loss of use when the home becomes unlivable. In each case the plaintiff lost use of the homes for over 12 months. The policy specifically states that defendant will provide ALE for up to two years. To date the defendant has provided no ALE.

5. The defendants fabricated justification for denying the two claims alleging a misrepresentation made by the plaintiff and that the defendant and fledging the defendant had started the fire.

6. Even though the fire was covered under the policy the defendant fabricated a justification for denial for the sole purpose of not paying the claim.

Melendez V. Allstate COMPANY PAGE 2 OF 12

7. On 08/18/2008 the plaintiff requested that the defendant reopen the claim to which the defendant refused. The denial of the claim prejudiced the plaintiff, was a breach of the policy and forced the plaintiff to initiate litigation to obtain policy benefits.

8. It is the internal policy of Defendant to deny all claims where the damage is extensive. Defendant singled this plaintiff out for denial because of the coincidence of the two unrelated losses and the substantial cost of repair. Plaintiff is insured on the structure to the extent of $300,000. The estimated cost to repair the property is in under of that amount.

9. Although defendant has local adjusters that regularly adjust claims of this type, the Defendant delegated this claim to Berger Kahn a law firm, for the purpose of pressuring and intimidating the plaintiff to drop the claim. By hiring Berger Kahn to deny the loss the defendant can claim they relied on an independent report to deny the claim. Berger Kahn made no attempt to adjust the claim or investigate coverage; their primary purpose was to justify the denial of a legitimate claim. Berger Kahn refused to look at any evidence favorable to the plaintiff then denied coverage.

10.    Defendant has paid no money for the fire loss claim, and has failed to pay the full value of the truck claim.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

11.    Plaintiff refers to and incorporates paragraphs 1-10 of the general allegations, as though fully set forth herein.

12.    Defendant Allstate is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California, and authorized by California Insurance Commissioner to transact business in California as a property fire and casualty insurer.

13.    At all times herein mentioned, plaintiff had in full force and effect a written homeowner insurance policy, number 904688081,(Exhibit A) hereinafter referred to as "the policy," issued to plaintiff as the insured by defendant and covering dwelling damage at the plaintiff's primary residence located at 9915 Mission Blvd. Riverside CA 92509; Policy # 904688080 for 9913 Mission Blvd Implied in the policy was a covenant by the defendant that it would act in good faith and deal fairly with the insured and that it would do nothing to interfere with the rights of the insured to receive the benefits of the agreement.

14.    On or about 7/30 2007 while the policy was in full force and effect Plaintiff suffered the above mentioned fire loss resulting in damage. By reason thereof, under the terms of the policy, plaintiff became entitled to receive from defendant, and defendant became obligated to pay to plaintiff $110,777.50 the amount of the claim for damage to the dwelling. The contents loss is in excess of and the Additional living expenses are in excess of $60,000.

15.    Plaintiff has performed all conditions of the policy on his part to be performed and, in accordance with the terms of the policy, gave defendant due and timely notice and proof or claim of loss.

16.    Plaintiff has demanded of defendant payment of the sum as alleged in Paragraph 14 above, but defendant has failed and refused, and continues to fail and refuse, to pay plaintiff that sum, and there is now due and owing from defendant to plaintiff the sum of $170,777.50

### SECOND CAUSE OF ACTION

BREACH OF CONTRACT

17.    Plaintiff refers to and incorporates paragraphs 1-10 of the general allegations, as though fully set forth herein.

18.    Defendant **Allstate** is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California, and authorized by California Insurance Commissioner to transact business in California as a property fire and casualty insurer.

19.    At all times herein mentioned, plaintiff had in full force and effect a written homeowner insurance policy, number 904688081,(Exhibit B) hereinafter referred to as "the policy," issued to plaintiff as the insured by defendant and covering dwelling damage at the plaintiff's primary residence located at 9913 Mission Blvd. Riverside CA 92509; Policy # 904688080 for 9913 Mission Blvd Implied in the policy was a covenant by the defendant that it would act in good faith and deal fairly with the insured and that it would do nothing to interfere with the rights of the insured to receive the benefits of the agreement.

20.    On or about 7/26 200s while the policy was in full force and effect Plaintiff suffered the above mentioned loss resulting in damage. By reason thereof, under the terms of the policy, plaintiff became entitled to receive from defendant, and defendant became obligated to pay to plaintiff Loss of Rents up to 12 months in the amount of 60,000

21.     Plaintiff has performed all conditions of the policy on his part to be performed and, in accordance with the terms of the policy, gave defendant due and timely notice and proof or claim of loss.

22.     Plaintiff has demanded of defendant payment of the sum as alleged in Paragraph 20 above, but defendant has failed and refused, and continues to fail and refuse, to pay plaintiff that sum, and there is now due and owing from defendant to plaintiff the sum of $60,000.00

### THIRD CAUSE OF ACTION

### INSURANCE BAD FAITH AND PUNITIVE

23.     Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-22 inclusive.

24.     At all times herein mentioned, plaintiff had in full force and effect a written homeowner insurance policy, Implied in the policy was a covenant by the defendant that it would act in good faith and deal fairly with the insured and that it would do nothing to interfere with the rights of the insured to receive the benefits of the agreement.

25.     The policy, among other things, provided coverage for fire damage to the dwelling, contents damage and additional living expenses. The policy will pay limits up to up to $86,250 for personal property and $115,000 for damage to the dwelling and up to 12 months for loss of use

Melendez V. Allstate COMPANY PAGE 7 OF 12

26.     On or about 07/30/2007 while the policy was in full
force and effect Plaintiff suffered the above mentioned
fire loss resulting in damage. By reason thereof, under the
terms of the policy, plaintiff became entitled to receive
from defendant, and defendant became obligated to pay to
plaintiff $115,000 the amount of the claim for damage to
the dwelling; the Additional living expenses are in excess
of $60,000. On 07/26/2009 loss there is 60,000 owed for
loss of use

27.     By the provisions of the policy defendant represented
to plaintiff that if plaintiff complied with all the terms
and conditions of the policy defendant would pay to
plaintiff the amount of damages up to the policy limit
which he was "legally entitled to recover" Plaintiff duly
complied with all the terms and conditions of the policy on
his part to be performed and was "legally entitled to
recover" damages in excess of $200,000 for damages to the
dwelling, contents and additional living expenses. This
amount is under the limits of the policy.

28.     Defendant's above-stated representation in its policy
was false and fraudulent in that defendant never intended
to pay a sum up to its policy limit in settlement of a
claim under the dwelling and personal property provision of
the policy where the insured was "legally entitled to
recover" at least that amount from the policy, but instead
had a fixed and firm policy of contesting all claims where

it could not negotiate a settlement for a sum of money
which was substantially less than due under the policy
limit. At the time defendant entered into the insurance
contract with plaintiff, defendant willfully concealed the
above facts, all for the purpose of defrauding and
deceiving plaintiff and inducing him to purchase the
policy.

29.    Plaintiff, at the time the representation was made,
believed it to be true and, in reliance on it, was induced
to, and did, enter into the insurance contract with
defendant; had plaintiff known the true facts, he would not
have purchased the policy.

30.    At all times herein material, defendant knew that
plaintiff was "legally entitled to recover" as damages from
the fire loss in an amount equivalent to the personal
property. Defendant failed to pay for personal property,
ALE or the dwelling damage.

31.    Notwithstanding defendant's knowledge of its
obligation to pay plaintiff the full value of the claim
defendant admitted to plaintiff that it was liable under
the policy but denied the claim wrongfully.

32.    Defendant delayed the claim for the sole purposes of
compelling plaintiff to accept a lesser sum in settlement
of his claim or, if he persisted in seeking more, to incur

substantial detriment, delay, and additional expenditures in pursuing enforcement of his claim, all during which time defendant would retain use of the money, defendant, in breach of its covenant of good faith and fair dealing, intentionally, maliciously, and oppressively refused and failed to pay the appropriate amount in accordance with the terms of the policy.

33.   As a direct and proximate result of defendant's wrongful conduct as herein alleged, plaintiff was compelled to present his claim in appraisal and in connection therewith to incur attorney's fees in the sum of $100,000 to present this claim.

34.   As a direct and proximate result of defendant's unreasonable delay in paying policy benefits plaintiff has lost use of the home for over a year.

35.   As a further direct and proximate result of defendant's wrongful conduct as herein alleged, plaintiff sustained emotional and mental distress and anguish, embarrassment, mortification, humiliation, and indignity, all to his general damage in the additional sum of $500,000 and special damages in amount of $100,000.

36.   In committing the acts described in this complaint, defendant acted in conscious disregard of the rights of plaintiff and was guilty of malice and/or oppression and/or

fraud in that as part of the investigation plaintiff was the victim of discrimination by the adjuster assigned to the claim and the attorneys assigned to deny the claim. Defendant acted with Malice, knowing the home was destroyed, in fact the defendant used the fact that the defendant was staying in the home which was not completely repaired because of the defendants own delays.

37.    Defendant acted with malice, when they confirmed the loss was covered and then withdrew coverage under a contrived pretense. Defendant did so to prolong the claim and wear down the plaintiff to withdrawal the claim.

38.    Defendants conduct was oppressive subjecting the plaintiff to cruel and unjust hardship by failing to pay any loss of use they forced the plaintiff into financial crisis.

39.    The conduct of defendant warrants an assessment of punitive damages in an amount appropriate to punish defendant and deter others from engaging in similar wrongful conduct.

WHEREFORE, plaintiff prays judgment against defendants, and each of them as follows for all causes of action:

1. For the policy benefits due to the plaintiff up to the policy limits of $270,000

2. For general damages according to proof;

3. For loss of earnings according to proof;

4. For damage to personal property according to proof;

5. For Punitive Damages

6. For reasonable attorney's fees;

7. For costs of suit herein incurred;

8. For such other and further relief as the court may deem proper;

Dated: Friday, July 31, 2009

Gregory D Angus

Attorney at Law

Exhibit A

3

# AMENDED
# Landlords Package
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| Artemio Melendez<br>9913 Mission Blvd<br>Riverside CA 92509-2560 | Pomes Ins Serv Inc<br>9087 E Las Tunas<br>Temple City CA 91780 | (626) 286-7734 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 04 688081 05/30 | Begins on May 30, 2005<br>at 12:01 a.m. Pacific Time<br>and continues until cancelled | May 30, 2005 to May 30, 2006<br>at 12:01 a.m. Pacific Time |

**LOCATION OF PROPERTY INSURED**
9915 Mission Blvd, Riverside, CA 92509-2560

**MORTGAGEE**
◆ INSTANT CAPITAL FUNDING GROUP INC ITS SUCCESSORS
  AND/OR
  1045 W Katella Ave   Orange CA 92867-3550            *Loan # 10701*

## Total Premium for the Premium Period  *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $521.00 |
| **TOTAL** | **$521.00** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act of 2002" applies is $0.00.  SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337.

*Your policy change(s) are effective as of Sep. 24, 2005*

PROP  *010000405002903069070402*

Information as of
September 23, 2005

Page 1
CA072/AMD

Exhibit **B**

## Allstate Insurance Company

### AMENDED
# Deluxe Plus Homeowners
# Policy Declarations

## Summary

| NAMED INSURED(S) | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| Artemio Melendez<br>2932 Dorchester Circle<br>Corona CA 92879-6118 | Pomes Ins Serv Inc<br>9160 Las Tunas<br>Temple City CA 91780 | (626) 286-7734 |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 04 698080 05/30 | Begins on May 30, 2007<br>at 12:01 a.m. Pacific Time<br>and continues until cancelled | May 30, 2007 to May 30, 2008<br>at 12:01 a.m. Pacific Time |

**LOCATION OF PROPERTY INSURED**
9913 Mission Blvd, Riverside, CA 92509-2560

**MORTGAGEE**
- COUNTRYWIDE HOME LOANS INC    ITS SCRS &/OR
  ASSIGNEES ATIMA
  PO BX 961206 Ftwx 22    Fort Worth TX 76161-0206          Loan # 106041320

## Total Premium for the Premium Period   (Your bill will be mailed separately)

| | |
|---|---|
| Premium for Property Insured | $396.00 |
| **TOTAL** | **$396.00** |

*Your policy change(s) are effective as of Feb. 23, 2008*

PROP *5100004086222930047420002*

Information as of
February 22, 2008     GA0705AMD

Page 1

# EXHIBIT B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| GREGORY D ANGUS | |

GREGORY D. ANGUS , SBN 210327
4298 Orange Street

RIVERSIDE, CA 92501
TELEPHONE NO.: (951) 781-6555     FAX NO.:
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME:

CASE NAME:  Melendez V Allstate

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | RIC |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | DEPT: |

532764

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812 )**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is  [X] is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought (*check all that apply*):
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (*specify*):
5. This case [ ] is  [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015*).
Date: 7/31/09
GREGORY D ANGUS
_____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Legal
Solutions
⊕ Plus

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19

Page 1 of 2

PAGE 21

## SUPERIOR COURT, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA

☐ BANNING 135 N. Alessandro Road, Banning, CA 92220
☐ BLYTHE 265 North Broadway, Blythe, CA 92225
☐ HEMET 880 N. State St., Hemet, CA 92543
☐ INDIO 46-200 Oasis St., Indio, CA 92201

☐ MURRIETA 30755-D Auld Road, Murrieta, CA 92563
☒ RIVERSIDE 4050 Main St., Riverside, CA 92501
☐ RIVERSIDE 4175 Main St., Riverside, CA 92501
☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591

Name and Address                    (951) 781-6555
GREGORY D ANGUS
GREGORY D. ANGUS , SBN 210327
4298 Orange Street

RIVERSIDE, CA 92501
Attorney for Plaintiff
or Party without Attorney

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 04 2009

J. SIRACUSA

Artemio     melendez

                            Plaintiff(s)

vs.

Allstate Insurance

                            Defendant(s)

CASE NO. RIC        532764

CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the
Court for the following reason:

☐  The action arose in this judicial district.

☒  The action concerns real property located in this judicial district.

☐  The defendant resides in this judicial district.

Dated:  7/31/09

Signed by: _____

GREGORY D. ANGUS , SBN 210327

ATTORNEY FOR PLAINTIFF(S)
OR PARTY WITHOUT ATTORNEY

GREGORY D ANGUS

(Rev. 7-1-03)

### CERTIFICATE OF COUNSEL

RI-030

PAGE 22

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA   92501
www.riverside.courts.ca.gov

NOTICE OF ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

MELENDEZ VS ALLSTATE INSURANCE CO

CASE NO. RIC 532764

This case is assigned to the Honorable Judge Douglas E. Weathers in Department 03 as the case management department. The Case Management Conference is scheduled for 02/02/10 at  8:30 in Department 03.

The plaintiff/cross-complainant shall serve a copy of this notice to all defendants/cross-defendants named or added to the complaint and file a proof of service.

Any disqualification pursuant to CCP Section 170.6(2) shall be filed in accordance with that section.

CLERK'S CERTIFICATE OF MAILING

I, Clerk of the Superior Court, County of Riverside, certify that I am not a party to this action; that on this date, I served a copy of the foregoing notice by depositing said copy (in a sealed envelope with prepaid postage) in the mail at _____, CA addressed as indicated.

Date:   08/04/09                      By: _____
                                          ILZE SIRACUSA, Deputy Clerk

TDACMC

09/03/2009 12:59 FAX  619 685 1124        CAL EXPRESS                                ☑002/002

1   Peter H. Klee, State Bar No. 111707
    John D. Edson, State Bar No. 185709
2   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
    600 West Broadway, Suite 2600
3   San Diego, California 92101-3372
    Telephone No.: 619.236.1414
4   Fax No.: 619.645.5376

5   Attorneys for Defendant Allstate Insurance Company

6

7

8                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **FOR THE COUNTY OF RIVERSIDE**

10

11  Artemio Melendez,                         Case No. RIC532764

12        Plaintiff,
                                              **DEFENDANT ALLSTATE INSURANCE**
13  v.                                        **COMPANY'S ANSWER TO**
                                              **PLAINTIFF'S COMPLAINT**
14  Allstate Insurance Company and DOES 1 to
    10,
15                                            The Hon. Douglas E. Weathers
          Defendants,                         Dept. 03
16                                            Complaint Filed: August 04, 2009

17

18        Defendant Allstate Insurance Company ("Allstate") hereby answers Plaintiff's Complaint (the

19  "Complaint") as follows:

20                               **GENERAL DENIAL**

21        Pursuant to the provisions of California Code of Civil Procedure section 431.30, Allstate

22  generally denies the allegations of the Complaint.

23                                  **DEFENSES**

24        Without conceding that it has the burden of proof as to any of these matters, Allstate submits

25  the following defenses:

26

27

28

                                              1
─────────────────────────────────────────────────────────────
      DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 03 2009

C. Mundo

## DEFENSE NO. 1.

### (Failure to State a Claim Upon Which Relief Can Be Granted)

The Complaint, and each purported cause of action therein, is barred to the extent it fails to state facts sufficient to constitute a cause of action or to state a claim upon which relief can be granted.

## DEFENSE NO. 2.

### (Policy Insuring Agreement)

The Complaint, and each purported cause of action therein, is barred because Plaintiff cannot meet his burden that the loss was sudden and accidental:  The policies provide in relevant part:

**Losses We Cover Under Coverages A and B.**

We will cover sudden and accident direct physical loss to property described in Coverages A – Dwelling Protection and Coverages B – Other Structures Protection except as limited or excluded in this policy.

## DEFENSE NO. 3.

### (Intentional Acts Exclusion)

The Complaint, and each purported cause of action therein, is barred under the Intentional Acts exclusion in the policies.  The policies provide in relevant part:

Losses We Do Not Cover Under Coverages A and B.

We do not cover loss to the property described in Coverage A – Dwelling Protection or Coverage B – Other Structured when: consisting of or caused by:

* * *

9.    Intentional or criminal acts of or at the direction of an insured person, if the loss that occurs;

    a)    may be reasonably excepted to result from such acts; or

    b)    is the intended resulting of such acts

This exclusion applies regardless of whether or not the insured person is actually charged with, or convicted or a crime.

2

**PAGE 25**

## DEFENSE NO. 4.

### (Willful Acts of Insured: Insurance Code § 533 *et seq.* )

Under Insurance Code § 533 *et seq.*, Plaintiff's right to recovery, if any, is barred as a result of his willful acts or those acting under his control of discretion.

## DEFENSE NO. 5.

### (Concealment or Fraud exclusion)

The Complaint, and each purported cause of action therein, is barred under the Concealment or Fraud exclusions in the policies :

Concealment or Fraud

* * *

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact of circumstance.

This exclusion applies regardless of whether or not the insured person is actually charged with, or convicted or a crime.

## DEFENSE NO. 6.

### (Misrepresentation During the Claim)

To the extent that Plaintiff or any insured has misrepresented any material fact from Allstate, the Complaint, and each purported cause of action therein, is barred.

## DEFENSE NO. 7.

### (Misrepresentation in Application)

To the extent that Plaintiff or any insured misrepresented a material fact to Allstate in connection with his insurance application(s), the Complaint, and each purported cause of action therein, is barred.

## DEFENSE NO. 8.

### (Concealment in Application)

To the extent that Plaintiff or any insured concealed a material fact from Allstate in connection with his insurance application(s), the Complaint, and each purported cause of action therein, is barred.

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

## DEFENSE NO. 9.

### (Unclean Hands)

Plaintiff's claims are barred by the doctrine of unclean hands.

## DEFENSE NO. 10.

### ("Suit Against Us" Provision)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to comply with the "Suit Against Us" provision in his Allstate policies.

## DEFENSE NO. 11.

### (Condition Precedent)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to perform certain conditions precedent to any obligations or indebtedness which Allstate might otherwise have had toward him.

## DEFENSE NO. 12.

### (Failure to Comply with Contract Terms)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff has not fully complied with all the terms and conditions of his policies.

## DEFENSE NO. 13.

### (Waiver)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff waived any rights he may otherwise have had against Allstate.

## DEFENSE NO. 14.

### ("What You Must Do After A Loss" Provision)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to comply with the "What You Must Do After A Loss" provision in his Allstate policies.

## DEFENSE NO. 15.

### (Failure to Cooperate)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to cooperate with Allstate.

## DEFENSE NO. 16.

### (Exclusion from Coverage Additional Living Expense)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the provisions in the policy regarding additional living expense coverage.

## DEFENSE NO. 17.

### (Exclusions from Coverage Additional Living Expense )

The Complaint, and each purported cause of action therein, may be barred and/or limited by the following provision in the policies:

"Payment for covered additional living expense will be limited to the least of the following:

1)      the time period required to repair or replace the property we cover, using due diligence and dispatch . . . ."

## DEFENSE NO. 18.

### (180-Day Provision)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the policy provisions regarding repair or replacement of damaged property within 180 days of an actual cash value payment.

## DEFENSE NO. 19.

### (Failure to Repair/Replace)

The Complaint, and each purported cause of action therein, may be barred and/or limited to the extent Plaintiff did not repair or replace the insured properties.

## DEFENSE NO. 20.

### (Exclusions for Enforcement of Building Codes, Ordinances or Laws)

The Complaint, and each purported cause of action therein, may be barred and/or limited by one or more exclusions in the policies for "Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any building structure, or other land at the residence premises . . . ."

5

**PAGE 28**

### DEFENSE NO. 21.

#### (Exclusions For Wear and Tear)

The Complaint, and each purported cause of action therein, may be barred and/or limited by one or more exclusions in the policies for "wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect."

### DEFENSE NO. 22.

#### (Statute of Limitations)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to file this suit within the applicable statute of limitations, including but not limited to California Code of Civil Procedure sections 337(1); 338(a) and (d); 339(1) and (3); and 343.

### DEFENSE NO. 23.

#### (Contractual One-Year Limitation Provision)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to comply with the one-year limitation provision in his Allstate policy.

### DEFENSE NO. 24.

#### (Statutory One-Year Limitation Provision)

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to comply with the one-year limitation provision contained in California Insurance Code section 2071.

### DEFENSE NO. 25.

#### (Notice)

Plaintiff's claims are barred to the extent that he failed to provide Allstate with prompt written notice of the loss.

### DEFENSE NO. 26.

#### (Proof of Loss)

Plaintiff's claims are barred to the extent that he failed to provide Allstate with a signed, sworn proof of loss within 60 days of the loss.

6

**PAGE 29**

**DEFENSE NO. 27.**

**(Failure to Mitigate)**

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff failed to mitigate his damages, if any.

**DEFENSE NO. 28.**

**(Comparative or Contributory Fault)**

Without in any way admitting that Plaintiff was in any way damaged, or that he was damaged by any conduct of Allstate, the damages complained of were proximately caused in whole or in part by the comparative or contributory fault and negligence of Plaintiff and/or his agents and representatives.

**DEFENSE NO. 29.**

**(Conduct of Third Parties)**

Without in any way admitting that Plaintiff was in any way damaged, to the extent that Plaintiff was damaged, the damage was caused in whole or in part by the acts of non-parties other than Allstate.

**DEFENSE NO. 30.**

**(Damage Caused By Others)**

To the extent the purported damages, if any, sustained or suffered by plaintiff was proximately caused or contributed to by the acts or omissions of other persons and entities, such acts or omissions were intervening and/or superseding cause(s) of plaintiff's damages, thus barring plaintiff's recovery or reducing plaintiff's recovery against Allstate.

**DEFENSE NO. 31.**

**(Estoppel)**

The Complaint, and each purported cause of action therein, is barred to the extent that Plaintiff is estopped to assert the claims set forth in the Complaint.

### DEFENSE NO. 32.

#### (Due Process)

An award of punitive damages greater than that of compensatory damages would violate Allstate's rights to due process under both the United States and California Constitutions.

### DEFENSE NO. 33.

#### (Due Process)

The Complaint, and each purported cause of action therein, is barred to the extent Plaintiff failed to state facts sufficient to constitute a claim for punitive damages against Allstate. Allstate further alleges that it has never taken any action which would constitute oppression, fraud or malice under Civil Code Section 3294.

### DEFENSE NO. 34.

#### (Due Process)

Allstate alleges that Civil Code Section 3294 is unconstitutionally vague under the Due Process Clause of the California and United States Constitutions.

### DEFENSE NO. 35.

#### (Due Process)

Any award of punitive damages based on anything other than Allstate's conduct specific to this lawsuit and/or to Plaintiff would violate the due process clause of the Fourteenth Amendment to the United States Constitution and the California Constitution.

### DEFENSE NO. 36.

#### (Due Process)

Unless both liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the California Constitution.

### DEFENSE NO. 37.

#### (Accord and Satisfaction)

Plaintiff's claims are barred due to an accord and satisfaction.

8

**PAGE 31**

**DEFENSE NO. 38.**

**(Release of Liability)**

Plaintiff has executed a contract, agreement, or settlement which releases Allstate of liability arising from the allegations made in the Complaint.

**DEFENSE NO. 39.**

**(Settlement of Loss)**

The Complaint, and each cause of action therein, is barred or limited by the following provision:

Our Settlement Of Loss

"We will settle any covered loss with you unless another payee is named in the policy.

We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, an appraisal award or a court judgment."

**DEFENSE NO. 40.**

**(Exclusions from Coverage)**

The Complaint, and each purported cause of action therein, may be barred and/or limited by one or more exclusions and limitations contained within the insurance policies issued to Plaintiff.

**DEFENSE NO. 41.**

**(Exclusions from Coverage Personal Property Reimbursement)**

The Complaint, and each purported cause of action therein, may be barred and/or limited by one or more exclusions and limitations contained within the insurance policies issued to Plaintiff for personal property reimbursement.

**DEFENSE NO. 42.**

**(Exclusions from Coverage Personal Property Reimbursement)**

The Complaint, and each purported cause of action therein, may be barred and/or limited by the following provision in the policies:

"Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

1)    the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2)    the cost of repair or restoration; or

3)    the limit of liability shown on the Policy Declarations for Coverage C . . . ."

### DEFENSE NO. 43.

### (Exclusions from Coverage Personal Property Reimbursement)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the following provision in the policies:

"Personal Property Reimbursement will not apply to:

2)    antiques, fine arts, paintings, statuary and similar articles which, by his inherent nature, cannot be replaced;

3)    articles whose age or history contribute substantially to his value.    This includes, but is not limited to memorabilia, souvenirs and collector's items; or

4)    property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss."

### DEFENSE NO. 44.

### (Exclusions for Pollutants)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the following provisions in the policies:

"We do not cover loss to the property . . . caused by or consisting of:

11.    Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants."

"We do not cover loss to property . . . consisting of or caused by:

14.    Any type of vapors fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:

a) lead in any form;

10

**PAGE 33**

1    b) asbestos in any form;

2    c) radon in any form; or

3    d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a

4    storage tank located at the residence premises."

5    ### DEFENSE NO. 45.

6    **(Exclusions for Contamination)**

7    The Complaint, and each purported cause of action therein, may be barred and/or limited by

8    one or more exclusions in the policies for "contamination, including, but not limited to the presence of

9    toxic, noxious or hazardous gasses . . ."

10   ### DEFENSE NO. 46.

11   **(Exclusions from Coverage)**

12   The Complaint, and each purported cause of action therein, may be barred and/or limited by

13   one or more exclusions in the policies for "[a]ny substantial change or increase in hazard, if changed

14   or increased by any means within the control or knowledge of an insured person."

15   ### DEFENSE NO. 47.

16   **(Exclusions from Coverage)**

17   The Complaint, and each purported cause of action therein, may be barred and/or limited by

18   one or more exclusions in the policies for "[t]he failure by any insured person to take all reasonable

19   steps to save and preserve property when the property is endangered by a cause of loss" covered in his

20   policy.

21   ### DEFENSE NO. 48.

22   **(Exclusions for Land)**

23   The Complaint, and each purported cause of action therein, may be barred and/or limited by

24   one or more exclusions in the policies for Land.

25

26

27

28

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

1

## DEFENSE NO. 49.

2

### (Exclusions from Coverage)

3
The Complaint, and each purported cause of action therein, may be barred and/or limited by

4
one or more exclusions in the policies for "[s]oil conditions, including but not limited to, corrosive

5
action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil."

6

## DEFENSE NO. 50.

7

### (Exclusions from Coverage)

8
The Complaint, and each purported cause of action therein, may be barred and/or limited by

9
one or more exclusions in the policies for "Weather Conditions that contribute in any way with a

10
cause of loss excluded in [the policies] to produce a loss."

11

## DEFENSE NO. 51.

12

### (Exclusions from Coverage)

13
The Complaint, and each purported cause of action therein, may be barred and/or limited by

14
one or more exclusions in the policies for "[w]ater, moisture, mildew, mold or mudslide (i.e.

15
mudflow) damage resulting primarily from any condition substantially confined to the insured

16
building or from any condition which is within the Insured's control . . . ."

17

## DEFENSE NO. 52.

18

### (Exclusions from Coverage)

19
The Complaint, and each purported cause of action therein, may be barred and/or limited by

20
one or more exclusions in the policies for "[w]ater or any other substance that backs up through

21
sewers or drains."

22

## DEFENSE NO. 53.

23

### (Exclusions from Coverage)

24
The Complaint, and each purported cause of action therein, may be barred and/or limited by

25
the following provisions in the policies:

26
"We do not cover loss caused by smoke from fireplaces or from agricultural smudging

27
or industrial operations."

28
"We do not cover loss to property . . . caused by:

12

**PAGE 35**

15.     f) Smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations."

### DEFENSE NO. 54.

### (Exclusions For Vermin)

The Complaint, and each purported cause of action therein, may be barred and/or limited by one or more exclusions in the policies for "insects, rodents, birds or domestic animals."

### DEFENSE NO. 55.

### ("Joint Obligations" Provision)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the following policy provision:

"The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person."

### DEFENSE NO. 56.

### (Insurable Interest/ standing and Liability)

The Complaint, and each purported cause of action therein, may be barred and/or limited because plaintiff lacks standing or an insurable interest.  The policies provide:

"In the event of a covered loss, we will not pay for more than an insured person's insurable interest in the property covered, nor more than the amount of coverage afforded by this policy."

### DEFENSE NO. 57.

### ("How We Pay For A Loss" Provisions)

The Complaint, and each purported cause of action therein, may be barred and/or limited by the "How We Pay For A Loss" provisions in Plaintiff's Allstate policies.

13

**PAGE 36**

1

**DEFENSE NO. 58.**

2

**(Offset / Credit)**

3      In the event there is a finding of damages for Plaintiff, such damages must be offset to the extent

4   Plaintiff received monetary benefits from collateral sources and/or by the amounts Plaintiff owe Allstate

5   and/or the credits to which Allstate is entitled from Plaintiff.

6

**DEFENSE NO. 59.**

7

**(Attorneys' Fees)**

8      Under California law, Plaintiff cannot recover attorneys' fees on his claims.

9

**DEFENSE NO. 60.**

10

**(Statute of Frauds)**

11      Some or all of the Complaint's causes of action based on the alleged oral promises of Allstate

12   and/or its agents may be barred by the Statute of Frauds.

13

**DEFENSE NO. 61.**

14

**(Spoliation of Evidence)**

15      Allstate is informed and believes that Plaintiff negligently or intentionally spoliated evidence

16   by disposing, modifying, replacing or permitting third parties to dispose, modify or replace property

17   that allegedly was damaged.  Accordingly, Plaintiff should be barred from bringing this action against

18   Allstate for failure to preserve critical evidence.

19

**DEFENSE NO. 62.**

20

**(Homeowner Policy Provisions)**

21      Allstate contends that plaintiff's claims regarding 9913 and 9915 Mission Blvd., Riverside,

22   California 92509 are barred or limited by the specific provisions in the Deluxe Homeowner's Policy,

23   Policy Number 904688080 05/30, attached as Exhibit "A".

24

**DEFENSE NO. 63.**

25

**(Landlord Policy Provisions)**

26      Allstate contends that plaintiff's claims regarding 9913 and 9915 Mission Blvd., Riverside,

27   California 92509 are barred or limited by the specific policy provisions in the Allstate Landlord

28   Policy, Policy Number 904688081 05/30, attached as Exhibit "B".

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

1

### DEFENSE NO. 64.

2

**(Reservation of Rights)**

3       Allstate is informed and believes and thereupon alleges that it may have other separate and

4   additional defenses of which it is presently unaware; Allstate reserves the right to allege other separate

5   and additional defenses upon the discovery of additional facts during the course of discovery.

6       WHEREFORE, Allstate prays for judgment as follows:

7       1.      That Plaintiff take nothing by reason of the Complaint or any pleading on file herein;

8       2.      For attorneys' fees and costs incurred in the defense of this action; and

9       3.      For such other and further relief as the Court may deem just and proper.

10  DATED: September 3, 2009          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

11

12                      By: _____

13                          John D. Edson
                            Attorneys for Defendant Allstate Insurance Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

# EXHIBIT A

Pomes Ins Serv Inc
9087 E Las Tunas
Temple City CA 91780



**Your Quick Insurance Check**

✓ Verify the information listed in the
   Policy Declarations.
✓ Please call if you have any questions.
✓ Now you can pay your premium
   before your bill is issued - visit
   allstate.com or call 1-800-Allstate®.

Artemio Melendez
9913 Mission Blvd
Riverside CA 92509-2560

**A new policy period is about to begin. Here are your renewal materials.**

We're pleased to once again offer you the opportunity to continue your Allstate Insurance Company Deluxe Plus Homeowners policy for another year. We appreciate your business and want to remind you that you're backed by an experienced Allstate team that's ready to help you protect your family and your financial security.

**Your policy documents are inside.**
You'll find listed on the enclosed Policy Declarations your coverages, limits, deductibles, premiums, and any discounts you have. As you read these materials, it would be a good idea to consider whether anything needs updating. We'd be happy to help you make sure that your insurance keeps up with any changes in your life.

*(over)*

PROP *5100004060410530694208O1*          000000904688080 070   010  CA

Information as of
April 10, 2006                RP253

**Renewing your policy is easy.**

Here's what will happen and what you'll need to do before the beginning of your next policy period.

- Please carefully check your Policy Declarations to make sure it accurately reflects your information and the choices you've made. Get in touch with your agent right away if there's anything you'd like to change.
- Unless a mortgage company or lienholder pays your insurance premium for you, keep an eye out for your bill, which will include information on payment options.
- If you're paying your premium using the Allstate Easy Pay Plan, you will not receive a bill. Instead, we'll send you a statement detailing your withdrawal schedule for the policy period.
- Carefully read all enclosed materials and store these documents with your other important papers. Keep in mind that the policy documents included may change each time you receive a renewal offer—please read them to make sure you know about any important information or changes related to your insurance.

**We're here to help you.**

Feel free to call your agent at (626) 286-7734. Or take advantage of the online services at *allstate.com,* where you can view your policy information and even make a payment by registering at the Allstate Customer Care Center. And for 24-hour-a-day, 7-day-a-week service and information, just call 1-800-ALLSTATE [®] (1-800-255-7828).

Remember, insurance is not only protection for today. It helps pave the way to a financially secure future.

We're glad you're with us.

*Edward M. Liddy*

Edward M. Liddy
President, Allstate Insurance Company

Allstate Insurance Company

## RENEWAL
# Deluxe Plus Homeowners
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>Artemio Melendez<br>9913 Mission Blvd<br>Riverside CA 92509-2560 | **YOUR ALLSTATE AGENT IS:**<br>Pomes Ins Serv Inc<br>9087 E Las Tunas<br>Temple City CA 91780 | **CONTACT YOUR AGENT AT:**<br>(626) 286-7734 |
| **POLICY NUMBER**<br>9 04 688080 05/30 | **POLICY PERIOD**<br>Begins on May 30, 2006<br>at 12:01 a.m. Pacific Time<br>and continues until cancelled | **PREMIUM PERIOD**<br>May 30, 2006 to May 30, 2007<br>at 12:01 a.m. Pacific Time |

**LOCATION OF PROPERTY INSURED**
9913 Mission Blvd, Riverside, CA 92509-2560

**MORTGAGEE**
- INSTANT CAPITAL FUNDING GROUP INC ITS SUCCESSORS
  AND/OR ASSIGNS
  1045 W Katella Ave    Orange CA 92867-3550        .        *Loan # 10701*

## *Total Premium for the Premium Period*   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $419.00 |
| **TOTAL** | $419.00 |

PROP *51000040604105306942060602*

P(HO)-0003

**PAGE 42**

# Allstate Insurance Company

Policy Number: **9 04 68808 05/30**   Your Agent: **Pomes Ins Serv Inc  (626) 286-7734**
For Premium Period Beginning: **May  30, 2006**

## POLICY COVERAGES AND LIMITS OF LIABILITY

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits<br>• $1,000  All Peril Deductible Applies | $115,000 | |
| Other Structures Protection<br>• $1,000  All Peril Deductible Applies | $11,500 | |
| Personal Property Protection - Reimbursement Provision<br>• $1,000  All Peril Deductible Applies | $86,250 | |
| Additional Living Expense | Up To 12 Months | |
| Family Liability Protection | $100,000 | each occurrence |
| Guest Medical Protection | $5,000 | each person |
| Building Codes | Refer to Policy | |
| Workers' Compensation and Employers' Liability<br>Coverage for Residence Employees | Statutory/See Form | |

The limit of liability for this structure (Coverage A-Dwelling Protection) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

This policy does not cover earth movement including earthquake

You have elected not to purchase a CEA earthquake policy

## DISCOUNTS   Your premium reflects the following discounts on applicable coverage(s):

Claim Free                                        15 %
Protective Device Rate Applied

## RATING INFORMATION

The dwelling is of Frame construction and is occupied by   1 family

P(HO)-0004

**PAGE 43**

# Allstate Insurance Company

Policy Number: **9 04 688080 05/30**     Your Agent:   **Pomes Ins Serv Inc  (626) 286-7734**
For Premium Period Beginning: **May 30, 2006**

## *Your Policy Documents*

Your Homeowners policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Deluxe Plus Homeowners Policy form AP337
- Domestic Workers' Comp & Emp Liability AP1127
- Bldg. Struct. Reimb. Ext. Limits End. form AP445
- Deluxe Plus Homeowners Amend End. form AP4486
- CA Deluxe Plus Amendatory Endorsement form AP2236

- California Amendatory Endorsement form AP29-3
- Amendment of Policy Provisions form AP425
- Lender's Loss Payable Endorsement form AU319
- California Std Fire Policy Prov. End form AP1862-1

## *Important Payment and Coverage Information*

Please note: This is not a request for payment.  Your bill will be mailed separately.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate.**

*Edward M. Liddy*
Edward M. Liddy
President

*Robert W. Pike*
Robert W. Pike
Secretary

PROP  *51000040604105306942003*

Information as of
April 10, 2006

**Page 3**

CA070RBD

P(HO)-0005

**PAGE 44**

## Allstate Insurance Company

Policy Number:   **9 04 688080 05/30**      Your Agent:   **Pomes Ins Serv Inc (626) 286-7734**
For Premium Period Beginning:   **May 30, 2006**

# Important Notice

## *DWELLING PROFILE*

Allstate has determined that the *estimated* cost to replace your home is : $104,874.

The enclosed Policy Declarations shows the limit of liability applicable to Coverage A—Dwelling Protection of your homeowners insurance policy. That limit of liability must be at least equal to the estimated replacement cost of your home as shown above.

Many factors can affect the cost to replace your home, including its size, type and any unique features. Allstate's estimate of the replacement cost of your home is based, in part, on the following home characteristic information, which includes information you provided to us.

DWELLING STYLE: Ranch, 1.0 Story(s),  1 Family(s), Built 1924,   800 sq. ft. Living Area

CONSTRUCTION: 100% Crawlspace

ADDITIONS: 1 Standard Kitchen(s), 3 Standard Full Bath(s)

DETAIL: Exterior Wall - Stucco(100%), Roof - Asphalt/Fiberglass Shingles(100%)

      Int Walls - Partitions - Plaster(100%), Wall Coverings - Paint(100%)

      Ceilings - Textured Sheetrock(100%), Flooring - Average Carpet/36 oz. Nylon( 80%)

      Flooring - Vinyl( 20%), Heat&Air Cond. - A/C same ducts(100%)

A "Help Sheet," that explains many of the terms used above to describe the characteristics of your home, is available from your Allstate agent. If you would like to obtain a "Help Sheet," simply contact your Allstate agent, who will be happy to send one to you.

It's important to keep in mind that the replacement cost shown above is only an estimate based on construction cost data for a point in time.  The *actual* amount it will cost to replace your home cannot be known until after a loss has occurred. The decision regarding the limit applicable to your Coverage A—Dwelling Protection is your decision to make, as long as you purchase at least the minimum limit Allstate specifies and meet certain other requirements.

If the information about your home shown above requires any change or if you have any questions or concerns regarding the information, the estimated cost to replace your home or the amount of your Coverage A—Dwelling Protection limit, please contact your Allstate agent.  Your Allstate agent will be happy to discuss this important matter with you.

SPECIAL NOTE TO ALLSTATE CUSTOMERS RENEWING THEIR HOMEOWNERS INSURANCE POLICY:  The estimated replacement cost for your home may have changed since the last time we communicated this information to you. That change could be due to several factors, including, for example, changes in the cost of building materials and labor rates.

**X7119**

Information as of
April 10, 2006

**Page 4**

CA070R8D

P(HO)-0006

**PAGE 45**

# Allstate Insurance Company Deluxe Plus Homeowners Policy

**Policy:** {{{{{{{{{{{{{{{{{{   **Effective:** ///////////////////

**Issued to:**
)))))))))))))))))))))))))))))))))
)))))))))))))))))))))))))))))))))
)))))))))))))))))))))))))))))))))
)))))))))))))))))))))))))))))))))

///////////////////////////////////
(((((((((((((((((((((((((((((((((((((
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{



Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company---Home Office: Northbrook, Illinois 60062

AP337

P(HO)-0007

## Table of Contents

*General*
Definitions Used In This Policy.................................. 2
Insuring Agreement....................................................... 3
Agreements We Make With You ............................... 4
Conformity To State Statutes ..................................... 4
Coverage Changes ........................................................ 4
Policy Transfer .............................................................. 4
Continued Coverage After Your Death .................... 4
Cancellation ................................................................... 4
Concealment Or Fraud ............................................... 5

*Section I— Your Property*

*Coverage A*
*Dwelling Protection*
Property We Cover Under Coverage A ..................... 5
Property We Do Not Cover Under Coverage A....... 5

*Coverage B*
*Other Structures Protection*
Property We Cover Under Coverage B ..................... 5
Property We Do Not Cover Under Coverage B ....... 5
Losses We Cover Under Coverages A and B........... 5
Losses We Do Not Cover Under
    Coverages A and B ................................................ 6

*Coverage C*
*Personal Property Protection*
Property We Cover Under Coverage C ..................... 8
Limitations On Certain Personal Property .............. 8
Property We Do Not Cover Under Coverage C ....... 9
Losses We Cover Under Coverage C......................... 9
Losses We Do Not Cover Under Coverage C........ 10

*Additional Protection*
Additional Living Expense......................................... 12
Credit Card, Bank Fund Transfer Card,
    Check Forgery and Counterfeit Money ............. 12
Debris Removal............................................................ 13
Emergency Removal Of Property ............................ 13
Fire Department Charges .......................................... 13
Temporary Repairs After A Loss ............................ 13
Trees, Shrubs, Plants and Lawns............................ 13
Temperature Change................................................... 13
Power Interruption...................................................... 13
Building Codes ............................................................ 14
Arson Reward .............................................................. 14
Collapse......................................................................... 14
Land................................................................................ 14

Lock Replacement....................................................... 14

*Section I Conditions*
Deductible..................................................................... 14
Insurable Interest and Our Liability ...................... 14
What You Must Do After A Loss ............................. 15
Our Settlement Options ............................................. 15
How We Pay For A Loss............................................. 15
Our Settlement Of Loss ............................................ 17
Appraisal....................................................................... 17
Abandoned Property................................................... 17
Permission Granted To You...................................... 18
Our Rights To Recover Payment.............................. 18
Our Rights To Obtain Salvage.................................. 18
Suit Against Us ........................................................... 18
Loss To A Pair Or Set................................................. 18
Glass Replacement...................................................... 18
No Benefit To Bailee .................................................. 18
Other Insurance........................................................... 18
Property Insurance Adjustment .............................. 18
Mortgagee ..................................................................... 19

*Section II— Family Liability and*
*Guest Medical Protection*

*Coverage X*
*Family Liability Protection*
Losses We Cover Under Coverage X ...................... 19
Losses We Do Not Cover Under Coverage X ........ 19

*Coverage Y*
*Guest Medical Protection*
Losses We Cover Under Coverage Y ...................... 21
Losses We Do Not Cover Under Coverage Y ........ 21

*Additional Protection*
Claim Expenses ........................................................... 23
Emergency First Aid .................................................. 23
Damage To Property Of Others .............................. 23

*Section II Conditions*
What You Must Do After An Accidental Loss........ 23
What An Injured Person Must Do— Coverage Y—
    Guest Medical Protection..................................... 24
Our Payment of Loss— Coverage Y—
    Guest Medical Protection..................................... 24
Our Limits Of Liability .............................................. 24
Bankruptcy.................................................................... 24

Page 1

Our Rights To Recover Payment—Coverage X—
 Family Liability Protection...................................24
Suit Against Us........................................................24
Other Insurance—Coverage X
 Family Liability Protection...................................24

**Section III— Optional Protection**

**Optional Coverages You May Buy**
Coverage BP
Increase Coverage On Business Property.............24
Coverage DP
Increased Coverage On Electronic
 Data Processing Equipment...............................24
Coverage F
Fire Department Charges........................................25
Coverage G
Loss Assessments ...................................................25
Coverage J
Extended Coverage On Jewelry, Watches
 and Furs...............................................................25
Coverage K
Incidental Office, Private School Or Studio...........26
Coverage M
Increased Coverage On Money................................26
Coverage P
Business Pursuits....................................................26
Coverage S
Increased Coverage On Securities.........................27
Coverage SD
Satellite Dish Antenna Systems ...........................27
Coverage SE
Portable Cellular Communication Systems...........27
Coverage ST
Increased Coverage On Theft Of Silverware.........27

**Definitions Used In This Policy**
1.  "You" or "your"—means the person named on
    the Policy Declarations as the insured and that
    person's resident spouse.

2.  "Allstate," "we," "us," or "our"— means the
    company named on the Policy Declarations.

3.  "Insured person(s)"—means **you** and, if a
    resident of **your** household:
    a)  any relative; and
    b)  any dependent person in **your** care.

Under **Coverage X—Family Liability
Protection** and **Coverage Y—Guest Medical
Protection**, "insured person" also means:
c)  any person or organization legally
    responsible for loss caused by animals or
    watercraft covered by this policy which are
    owned by an **insured person. We** do not
    cover any person or organization using or
    having custody of animals or watercraft in
    any **business**, or without permission of the
    owner.
d)  with respect to the use of any vehicle
    covered by this policy, any person while
    engaged in the employment of an **insured
    person.**

4.  "**Bodily injury**"— means physical harm to the
    body, including sickness or disease, and
    resulting death, except that **bodily injury** does
    not include:
    a)  any venereal disease;
    b)  Herpes;
    c)  Acquired Immune Deficiency Syndrome
        (AIDS);
    d)  AIDS Related Complex (ARC);
    e)  Human Immunodeficiency Virus (HIV);

    or any resulting symptom, effect, condition,
    disease or illness related to (a) through (e) listed
    above.

    Under **Coverage Y—Guest Medical
    Protection, bodily injury** means physical harm
    to the body, including sickness or disease,
    except that **bodily injury** does not include:
    a)  any venereal disease;
    b)  Herpes;
    c)  Acquired Immune Deficiency Syndrome
        (AIDS);
    d)  AIDS Related Complex (ARC);
    e)  Human Immunodeficiency Virus (HIV);

    or any resulting symptom, effect, condition,
    disease or illness related to (a) through (e) listed
    above.

5.  "**Building structure**"—means a structure with
    walls and a roof.

P(HO)-0009

**PAGE 48**

6. "**Business**"—means:
   a)  any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

     However, the mutual exchange of home day care services is not considered a **business**;
   b)  any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
       1)  it is rented occasionally for residential purposes;
       2)  a portion is rented to not more than two roomers or boarders; or
       3)  a portion is rented as a private garage.

7. "**Residence premises**"—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8. "**Insured premises**"—means:
   a)  the **residence premises**; and
   b)  under **Section II** only:
       1)  the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquired for **your** use as a private residence while this policy is in effect;
       2)  any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
       3)  cemetery plots or burial vaults owned by an **insured person;**
       4)  vacant land, other than farmland, owned by or rented to an **insured person;**
       5)  land owned by or rented to an **insured person** where a one, two, three or four family dwelling is being built as that person's residence;
       6)  any premises used by an **insured person** in connection with the **residence premises;**

       7)  any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9. "**Occurrence**"—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. "**Property damage**"—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. "**Residence employee**"—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. "**Dwelling**"—means a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

## Insuring Agreement

In reliance on the information **you** have given **us, Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises.**

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These

persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Agreements We Make With You

**We** make the following agreements with **you**:

### Conformity to State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes

When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

### Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

### Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:
1) **your** legal representative while acting as such, but only with respect to the **residence premises**

and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation

**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material fact in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the

Page 4

premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

# Section I — Your Property

## Coverage A
## Dwelling Protection

### Property We Cover Under Coverage A:

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection**.

2. Land, except as specifically provided in **Section I — Additional Protection** under item 13, "Land."

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Coverage B
## Other Structures Protection

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. **Structures** attached to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to other **building structures**.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A — Dwelling Protection**.

3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

### Losses We Cover Under Coverages A and B:

**We** will cover sudden and accidental direct physical loss to property described in **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection** except as limited or excluded in this policy.

Page 5

P(HO)-0012

**PAGE 51**

## Losses We Do Not Cover Under Coverages A and B:

**We** do not cover loss to the property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** consisting of or caused by:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises.**

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other land at the **residence premises**, except as

specifically provided in **Section I, Additional Protection** under item 10, —"Building Codes".

   **We** do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

12. Collapse, except as specifically provided in **Section I — Additional Protection** under item 12, "Collapse."

13. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

**Page 6**

In addition, **we** do not cover loss consisting of or caused by any of the following:

15. a)  wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b)  mechanical breakdown;
    c)  growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d)  rust or other corrosion, mold, wet or dry rot;
    e)  contamination, including, but not limited to the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
    f)  smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    g)  settling; cracking; shrinking; bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    h)  insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
    i)  seizure by government authority.

    If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a)  maintain heat in the **building structure**; or

    b)  shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a)  from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b)  from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

20. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a)  planning, zoning, development, surveying, siting;
    b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c)  materials used in repair, construction, renovation or remodeling; or
    d)  maintenance;

    of property whether on or off the **residence premises** by any person or organization.

Page 7

23. **We** do not cover loss to covered property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** when:
   a) there are two or more causes of loss to the covered property; and
   b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 22 above.

## Coverage C
## Personal Property Protection

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C — Personal Property Protection.** This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C — Personal Property Protection.** The total amount of coverage for each group in any one loss is as follows:

1. $ 200 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $ 2,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per item.

5. $ 1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6. $ 1,000 — Manuscripts, including documents stored on electronic media.

7. $ 2,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

8. $ 1,000 — Trailers not used with watercraft.

9. $ 2,500 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value; subject to a maximum amount of $1,000 per item.

10. $ 2,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $ 3,000 — Theft of firearms.

12. $ 2,500 — Theft of silverware, pewterware and goldware.

**Page 8**

P(HO)-0015
**PAGE 54**

13. $ 5,000 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
    a) the retail value of the media, if pre-programmed; or
    b) or the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $10,000 — Theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wallhanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

### Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to an **insured person.**

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

### Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

    **We** do not cover:
    a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
    b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

**Page 9**

**We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8.  Vandalism and Malicious Mischief.

    **We** do not cover vandalism or malicious mischief if **your** dwelling has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9.  Falling objects.

    **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

    **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

**We** do not cover loss at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
a)  maintain heat in the **building structure**; or
b)  shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

    **We** do not cover:
    a)  theft or attempted theft committed by an **insured person**;
    b)  theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
    c)  theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
    d)  theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
    e)  theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

### *Losses We Do Not Cover Under Coverage C:*

**We** do not cover loss to the property described in **Coverage C — Personal Property Protection** caused by or consisting of:
1.  Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

**Page 10**

P(HO)-0017

**PAGE 56**

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**, except as specifically provided in **Section I, Additional Protection** under item 10 — "Building Codes."

   **We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property

when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

Page 11

P(HO)-0018
**PAGE 57**

of property whether on or off the **residence premises** by any person or organization.

15. **We** do not cover loss to covered property described in **Coverage C — Personal Property Protection** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 14 above.

## *Additional Protection*

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

      Payment for covered additional living expense will be limited to the least of the following:
      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3) 12 months.
   b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

These periods of time are not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   **We** will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   **Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   **We** do not cover:
   a) loss arising from any **business** of an **insured person**;
   b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an **insured person**.

   When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

   **We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the

Page 12

policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

**We** will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

**We** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
**We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
**We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises.** No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for

temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
**We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A—Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises. We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises,** vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure.**

**We** will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A—Dwelling Protection.**

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
**We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure.**

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
**We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises.** If a power interruption is known to an **insured**

Page 13

**person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Building Codes**
We will pay up to 10% of the amount of insurance shown on the Policy Declarations under **Coverage A — Dwelling Protection** to comply with local building codes after a covered loss to the **dwelling** and when repair or replacement results increased cost due to the enforcement of building codes, ordinanances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

11. **Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

12. **Collapse**
We will cover:
a)  the entire collapse of a covered **building structure**;
b)  the entire collapse of part of a covered **building structure**; and
c)  direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a **building structure** specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a)  a loss we cover under **Section I, Coverage C — Personal Property Protection**;
b)  hidden decay of the **building structure**;
c)  hidden damage to the **building structure** caused by insects or vermin;
d)  weight of persons, animals, equipment or contents;
e)  weight of rain or snow which collects on a roof;
f)  defective methods or materials used in construction, repair, remodeling or

renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

13. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I — Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

14. **Lock Replacement**
**Coverage A — Dwelling Protection** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $500.

## *Section I Conditions*

1.  **Deductible**
We will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2.  **Insurable Interest and Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest

**Page 14**

in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, **you** must:
   a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
   e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
   f) as often as **we** reasonably require:
      1) show **us** the damaged property.
      2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
      3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and
   g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
      1) the date, time, location and cause of loss;
      2) the interest **insured persons** and others have in the property, including any encumbrances;

      3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
      4) any other insurance that may cover the loss;
      5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
      6) at **our** request, the specifications of any damaged **building structure** or other structure;
      7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

4. **Our Settlement Options**
   In the event of a covered loss, **we** have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For a Loss."

   Within 30 days after **we** receive **your** signed, sworn proof of loss  **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
   Under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection,** payment for covered loss will be by one or more of the following methods:
   a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
      1) the whole amount of loss for property covered under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection,** without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building

P(HO)-0022
**PAGE 61**

Structure Reimbursement provision, or;

2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection** without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph "c" and paragraph "d", if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other  Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent

construction for similar use on the same **residence** premises;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence** premises; or

3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection,** regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structures Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Coverage C — Personal Property Protection;**

2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure;**

3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure;** or

4) land.

Payment under "a", "b", or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or

**Page 16**

laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures except as provided under **Section I, Additional Protection 10,** ——Building Codes.

d) Personal Property Reimbursement. Under **Coverage C ——Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C —— Personal Property Protection,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1) property insured under **Coverage A —— Dwelling Protection** and **Coverage B —— Other Structures Protection,** except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to

memorabilia, souvenirs and collector's items; or
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

6. **Our Settlement Of Loss**
   **We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award, or a court judgment.

7. **Appraisal**
   If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

   The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

   Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
   **We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person.**

Page 17

9. **Permission Granted To You**
   a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
   b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
    When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
    **We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

    **We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

    When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
    No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
    If there is a covered loss to a pair or set, **we** may:

   a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
   b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
    Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
    This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
    If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
    When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies:

    The limit of liability shown on the Policy Declarations for **Coverage A — Dwelling Protection** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

    The limit of liability for **Coverage A — Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

    Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection** in accordance with the **Allstate** manual of Rules and Rates.

**Page 18**

P(HO)-0025

**PAGE 64**

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

18. **Mortgagee**
A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

## Section II — Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

#### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

#### Losses We Do Not Cover Under Coverage X:
1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of

**Page 19**

P(HO)-0026
**PAGE 65**

this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn and garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;

   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by an **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

Page 20

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## Coverage Y
## Guest Medical Protection

### Losses We Cover Under Coverage Y:

**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance; hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person;** or
2. off the **insured premises**, if the **bodily injury:**
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee;**
   c) is caused by an animal owned by or in the care of an **insured person;** or
   d) is sustained by a **residence employee.**

### Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

Page 21

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises;**
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises;**
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee.**

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee.**

7. **We** do not cover bodily injury arising out of:
   a) the negligent supervision by any **insured person** of any person; or

   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person.**

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person.**

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises,** owned, rented or controlled by an **insured person.** This exclusion does not apply to **bodily injury** to a **residence employee.**

13. **We** do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

**Page 22**

## *Additional Protection*

We will pay, in addition to the limits of liability:

1. **Claim Expense**

   We will pay:

   a) all costs we incur in the settlement of any claim or the defense of any suit against an **insured person**;

   b) interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy; interest will be paid only on damages which do not exceed our limits of liability;

   c) premiums on bonds required in any suit we defend; we will not pay bond premiums in an amount that is more than our limit of liability; we have no obligation to apply for or furnish bonds;

   d) up to $250 per day for loss of wages and salary, when we ask you to attend trials and hearings;

   e) any other reasonable expenses incurred by an **insured person** at our request.

2. **Emergency First Aid**

   We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**

   At **your** request, we will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At our option, we will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation. We will not pay for **property damage**:

   a) to property covered under **Section I** of this policy;

   b) to property intentionally damaged by an **insured person** who has attained the age of 13;

   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or

   d) arising out of:

   1) past or present **business** activities;

   2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or

   3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## *Section II Conditions*

1. **What You Must Do After An Accidental Loss**

   In the event of **bodily injury** or **property damage**, **you** must do the following:

   a) Promptly notify **us** or **our** agent stating:

   1) **your** name and policy number;

   2) the date, the place and the circumstances of the loss;

   3) the name and address of anyone who might have a claim against an **insured person**;

   4) the names and addresses of any witnesses.

   b) Promptly send **us** any legal papers relating to the accident.

   c) At **our** request, an **insured person** will:

   1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;

   2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;

   3) attend any hearing or trial.

   d) Under the **Damage to Property of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

Page 23

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person.**

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons,** injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Family Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence.**

   **Our** total liability under **Coverage Y@-Guest Medical Protection** for all medical expenses payable for **bodily injury,** to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person.**

6. **Our Rights to Recover Payment — Coverage X — Family Liability Protection**
   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Coverage X — Family Liability Protection** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person,** injured person, and **us.**
   c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person.**

8. **Other Insurance — Coverage X — Family Liability Protection**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## *Section III — Optional Protection*

### *Optional Coverages You May Buy*

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BP**
   **Increased Coverage On Business Property**
   The $2,000 limitation on **business** property located on the **residence premises,** under **Coverage C — Personal Property Protection,** is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises.**

2. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The $5,000 limitation on electronic data processing equipment under **Coverage C —**

P(HO)-0031

**PAGE 70**

**Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

3. **Coverage F**
   **Fire Department Charges**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Coverage G**
   **Loss Assessments**
   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

   **We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
   a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
   b) **bodily injury** or **property damage** covered under **Section II** of this policy.

   Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

   **Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $250 and then only for the amount of such excess. This coverage is not

subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Sections I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Coverage J**
   **Extended Coverage On Jewelry, Watches and Furs**
   **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
   a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
   b) furs, including any item containing fur which represents its principal value.

   The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C — Personal Property Protection**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

   **We** do not cover loss caused by or consisting of:
   a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
      1) may be reasonably expected to result from such acts; or
      2) is the intended result of such acts.
   b) wear and tear, gradual deterioration, inherent vice, insects or vermin;
   c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

Page 25

**We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

d)  war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

e)  failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property Protection**, also applies to a loss under this coverage.

6.  **Coverage K**
**Incidental Office, Private School Or Studio**
a)  The $2,000 limit applying to property used or intended for use in a **business** under **Coverage C — Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to **Coverage C — Personal Property Protection, Limitations On Certain Personal Property** on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

b)  **Coverage X — Family Liability Protection and Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person.** The occupancy of the described property shall not be considered a **business.**

**We** do not cover **bodily injury** to:
a)  any employee other than a **residence employee**; or
b)  any person arising out of corporal punishment administered by or at the direction of an **insured person.**

7.  **Coverage M**
**Increased Coverage On Money**
The $200 limitation on money, bullion, bank notes, coins and other numismatic property under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

8.  **Coverage P**
**Business Pursuits**
**Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an **insured person.**

**We** do not cover:
a)  **bodily injury** or **property damage** arising out of the business pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person.**

This also means a partnership or joint venture of which an **insured person** is a partner or member;
b)  **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
c)  **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
d)  **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
e)  **bodily injury** to any person arising out of corporal punishment administered by or at

Page 26

P(HO)-0033
**PAGE 72**

the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

9.   **Coverage S**
   **Increased Coverage On Securities**
   The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations.

10.   **Coverage SD**
   **Satellite Dish Antennas**
   **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C — Personal Property Protection.**

11.   **Coverage SE**
   **Portable Cellular Communication Systems**
   **Coverage C — Personal Property Protection** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a **business.**

   The amount of coverage is shown on the Policy Declarations.

12.   **Coverage ST**
   **Increased Coverage On Theft Of Silverware**
   The $2,500 limitation on theft of silverware, pewterware and goldware under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

The amount of coverage is shown on the Policy Declarations.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Ilinois, and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declaraions by an authorized agent of **Allstate.**

Secretary

President,
Personal Property & Casualty

Page 27

P(HO)-0034
**PAGE 73**

<div style="border:1px solid black; padding:10px;">

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

</div>

*This Coverage Form Changes Your Policy — Keep It With Your Policy*

## California
## Workers' Compensation And Employers' Liability Coverage For Residence Employees Coverage Form — AP1127

THIS COVERAGE FORM AMENDS THE FOLLOWING ALLSTATE INSURANCE COMPANY AND ALLSTATE INDEMNITY COMPANY POLICIES: Deluxe, Deluxe Plus, Standard Homeowners, Condominium and Renters

**Part A — Coverages Defined**
When "Workers' Compensation and Employers' Liability Coverage For Residence Employees" appears on the Policy Declarations (Coverage WC), the following coverages apply:

**Coverage I: Workers' Compensation**
With respect to a **residence employee, Allstate** will pay on behalf of an **insured person** as an employer of a **residence employee** all benefits when due as required by the California Workers' Compensation Law. At a minimum, such benefits will be equivalent to those benefits in the standard workers' compensation policy issued in California. If benefits prescribed by a state other than the State of California apply, **Allstate** will pay those instead; and

**Coverage II: Employers' Liability**
With respect to a **residence employee, Allstate** will pay on behalf of an **insured person**, all damages for which an **insured person** is legally liable because of **bodily injury** sustained by a **residence employee**. This coverage, however, does not apply to any suit brought or judgment or to any action on such judgment rendered by any court outside of the United States of America, its territories and possessions, or Canada.

**Definitions Used in This Coverage Form**
The following definitions apply only for the purposes of this coverage form:
1. **Business** — means:
   a. any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**; however, the mutual exchange of home day care services is not considered a **business**.

   b. unless described on the Policy Declarations, any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      i. it is rented occasionally for residential purposes;
      ii. a portion is rented to not more than two roomers or boarders; or
      iii. a portion is rented as a private garage.

**Page 1**

2. **Bodily injury** — means bodily harm, sickness or occupational disease, including required care, and death including reasonable burial expense.

3. **Residence employee** — means an employee of any **insured person**; while
   a. performing duties arising out of and in the course of employment in connection with a **residence premises**; or

   b. performing similar duties elsewhere which are related to or arise from an **insured premises**, except those duties performed in connection with a **business** of any **insured person**.

**Residence employee**, however, does not include an employee, who, during the 90 calendar days immediately preceding the date of their injury,
(1) engaged in such employment for less than 52 hours; or

(2) earned less than $100 in wages.

**Conditions of Coverage**
Coverage under this form applies only if all of the following conditions are met:
1. The **bodily injury** to the **residence employee** must be caused by an employment related accident or an occupational disease.

2. The **bodily injury** to a **residence employee** must occur while the **residence employee** is:
   a. in the United States of America, its territories or possessions, or Canada; or

   b. temporarily located elsewhere but only if they are a citizen or resident of the United States or Canada.

3. The **bodily injury** to a **residence employee** must occur during the policy period.

4. If **bodily injury** to a **residence employee** results from or is aggravated by an occupational disease, the employee's last day of exposure to the conditions causing or aggravating such **bodily injury** must occur during the policy period while the **residence employee** is in the employment of an **insured person**.

**Applicable Policy Provisions**
In addition to the provisions specific to this coverage form, the following policy parts apply:
1. Under the "General" Policy Section:
   a. "Definitions Used In This Policy", the following definitions apply: **Allstate, we, us, our, Insured person(s), Insured premises, Residence premises, You** and **your.**
   b. "Coverage Changes"
   c. "Policy Transfer"
   d. "Continued Coverage After Your Death"
   e. "Cancellation"
   f. "Concealment Or Fraud"

2. Under Section II — "Family Liability and Guest Medical Protection", "Coverage X — Family Liability Protection", "Losses We Cover Under Coverage X", only that part of the provision pertaining to the defense of any **insured person**.

3. Under Section II — "Additional Protection":
   "Claim Expense(s)"

4. Under Section II — "Conditions":

**Page 2**

a. "What You Must Do After An Accidental Loss", except those references to "property damage" and "Damage To Property Of Others" within this provision do not apply.
b. "Bankruptcy"
c. "Our Rights to Recover Payment — Coverage X — Family Liability Protection"
d. "Suit Against Us"

**Additional Provisions Applicable to This Coverage Form**
1. **Conformity to State Statutes**
   Provisions of this coverage form conflicting with the California Workers' Compensation Law regarding any **residence employee** for whom workers' compensation benefits must be provided by this coverage form are amended to conform to the appropriate state law.

2. **Other Insurance**
   If a loss covered by this coverage form is also covered by other insurance, **Allstate** will pay only that proportion of benefits and/or damages the limits of liability applying to this coverage form bear to the total amount of insurance covering the loss. If however, any other insurance is written specifically on an excess basis over the limits of liability of this policy, coverage under this form will be primary.

3. **Notice of Claim**
   Under Coverage I: Workers' Compensation, **we** will consider knowledge by any **insured person** of **bodily injury** to a **residence employee** to be knowledge by **us**.

4. **Our Rights to Review Your Employment Records**
   **Allstate** or **our** legal representative has the right but not the obligation to review any records related to the employment of a **residence employee** by an **insured person**. **We** may review these records and adjust premiums for a period of up to three years from the last anniversary date of the policy to which this coverage form is attached. **Our** review, performed with **your** knowledge and cooperation, will occur during regular business hours and may be used to determine and adjust the premiums accordingly for the latest three policy terms this coverage was in force.

**Limits of Liability — Coverage II:**
**Our** total limit of liability shall not exceed ####### for all damages because of **bodily injury**:
a. sustained by one or more **residence employees** in any one accident; or

b. caused by disease and sustained by a **residence employee**.

**Our** total limit of liability shall not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain injury by disease.

**Exclusions**
Coverage does not apply:
1. Under Coverages I and II, to any **bodily injury** or liability:
   a. to anyone other than a **residence employee**;
   b. arising from any **business** of an **insured person**; or

Page 3

P(HO)-0037
**PAGE 76**

2.  Under Coverage II, to any damages for which **you** become liable because of:
    a.  assumption of liability by any **insured person** under any contract or agreement;
    b.  any liability resulting from intentional acts of any **insured person**;
    c.  any liability resulting from the employment of any **residence employee** employed in violation of law;
    d.  the employment of an **insured person** by any other **insured person**.
    e.  any obligations imposed by a workers' compensation, occupational disease, unemployment compensation, disability benefits law or similar law;
    f.  any liability for **bodily injury** by an occupational disease unless a written claim is made or suit brought against an **insured person** within 36 months after the end of the policy period to which this coverage form applies;
    g.  punitive or exemplary damages; or
    h.  any employment practices prohibited by any California or Federal statute.

**Part B — Schedule of Full Time Residence Employees**

P(HO)-0038

**PAGE 77**

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## Building Structure Reimbursement
## Extended Limits Endorsement — AP445 (4/95)

For an additional premium and when the Policy Declarations indicates that the "**Building Structure Reimbursement Extended Limits Endorsement**" applies, the following amendment is made to condition 5 (titled "How We Pay For A Loss") in **Section I Conditions**:

In provision c) (titled "Building Structure Reimbursement."), item 3) of the second paragraph is replaced by the following:

3)   150% of the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

This endorsement does not apply to any optional coverage purchased for earthquake damage, if earthquake damage coverage is purchased with **your** homeowner policy.

This endorsement applies only if:

1)   **You** insure **your** dwelling, attached structures and detached **building structures** to 100% of replacement cost as determined by:
   a)   a home replacement cost estimator completed and based on the accuracy of information **you** furnished; or
   b)   **our** inspection of **your** **residence premises**;

2)   **You** have accepted the Property Insurance Adjustment Condition, agree to accept each annual adjustment in the **Coverage A — Dwelling Protection** limit of liability, and pay any additional premium charged; and

3)   **You** notify **us** within 60 days of the start of any modifications that increase the aggregate value of **your** dwelling, attached structures and detached **building structures** at the **residence premises** by $5,000 or more, and pay any resulting additional premium due for the increase in value.

All other policy terms and conditions apply.

# Policy Endorsement
*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## Deluxe Plus Homeowners
## Amendatory Endorsement — AP4486

This endorsement amends your Deluxe Plus Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

I.   In the **Definitions Used In This Policy** provision, item 1. is replaced by the following:

    1.   **"You"** or **"your"** — means the person named on the Policy Declarations as the insured and:
        a)   that person's resident spouse; or
        b)   a party who has established with that person a registered domestic partnership under California state law if a resident of the same household.

II.  In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, item 15.d), "rust or other corrosion, mold, wet or dry rot", is replaced by:

    15.   d) rust or other corrosion;

III. In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, the following is added:

    24.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

    This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

IV.  In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverage C**, the following is added:

    16.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

    This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

Page 1

V.  In **Section I—Your Property**, under **Additional Protection—Additional Living Expense** is replaced by the following:

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

      Payment for additional living expense as a result of a covered loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** will be limited to the least of the following:
      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3) 12 months.

   b) **We** will pay **your** lost fair rental income resulting from a covered loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection,** less charges and expenses which do not continue, when a loss **we** cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months. However, payments for **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions— Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a loss **we** insure against. However, payments for increase in living expenses or **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

      These periods of time are not limited by the termination of this policy.

      **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

      No deductible applies to this protection.

VI.  In **Section I—Conditions**, under item 5, **How We Pay For A Loss,** the following changes are made:

A.  The second paragraph in sub-item b) Actual Cash Value is replaced by the following:

Page 2

**You** may make claim for additional payment as described in paragraph "c" and paragraph "d" if **you** repair or replace the damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **you** may make claim for additional payment as described in paragraph "c" and paragraph "d", if **you** repair or replace the damaged, destroyed or stolen covered property within 24 months of the actual cash value payment.

B.   The first paragraph in sub-item c) Building Structure Reimbursement is replaced by the following:

c)   Building Structure Reimbursement. Under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **we** will make additional payment under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection** to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 24 months of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, item 24.

C.   The first paragraph in sub-item d) Personal Property Reimbursement is replaced by the following:

d)   Personal Property Reimbursement. Under **Coverage C—Personal Property Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **we** will make additional payment under **Coverage C—Personal Property Protection** to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 24 months of the actual cash value payment.

VII.   In **Section I—Conditions**, the following is added:

19.   **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**

In the event of a covered water loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A— Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living

Page 3

expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection.**

VIII.  In **Section II—Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage X**, the following is added:

17.  **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

18.  **We** do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

IX.  In **Section II—Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage Y**, the following is added:

14.  **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

All other policy terms and conditions apply.

Page 4

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## California
## Deluxe Plus Homeowners Amendatory Endorsement —AP2236

I.   In the **General** section, the following provisions are added:

**What Law Will Apply**
This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

II.   In **Section I—Your Property,** the following changes are made:

A.   Under **Coverage C—Personal Property Protection, Limitations On Certain Personal Property,** item 15. is added:

Page 1

15. $400—Theft of compact discs, while compact discs are away from the **residence premises**. This is the maximum amount **we** will pay for an entire collection.

B.   Under **Additional Protection,** the **Building Codes** provision is replaced by the following:

10. **Building Codes**
**We** will pay up to 10% of the amount of insurance shown on the Policy Declarations under **Section I, Coverage A—Dwelling Protection** to comply with applicable laws regulating the construction, use, or repair of any property or requiring the tearing down of any property after a covered loss to covered **building structures** and when repair or replacement results in increased cost due to the enforcement of these laws.

The amount of insurance provided by this coverage is a separate limit of liability, and is the maximum **we** will pay for any one loss. Coverage only applies to that portion of the **dwelling** that was damaged due to a covered loss.

All other policy terms and conditions apply.

**Page 2**

P(HO)-0045

**PAGE 84**

<div style="border:1px solid black; padding:8px;">

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

</div>

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## California
## Deluxe Plus and Deluxe Homeowners Policy
## Amendatory Endorsement — AP29-3

It is agreed that **your** policy is amended as follows:

I.      The **General** section of **your** policy is revised as follows:

      A.      The **Cancellation** provision is replaced by the following:

**Cancellation**
**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations.  When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 20 days notice before the cancellation takes effect, however, if the reason for cancellation is nonpayment of premium or fraud, we may cancel this policy by giving you at least 10 days notice of cancellation.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1.      Non-payment of premium;
2.      Fraud or material misrepresentation by **you** or **your** representative in obtaining the policy;
3.      Fraud or material misrepresentation by **you** or **your** representative in pursuing a claim under this policy;
4.      Grossly negligent acts or omissions by **you** or **your** representative which substantially increase any of the hazards insured against;
5.      **You** have been convicted of a crime and one of the necessary elements of the crime was an act increasing any hazard insured against;
6.      Physical changes in the insured property resulting in the property becoming uninsurable; or

Page 1

7. **You** have purchased an earthquake policy from the California Earthquake Authority, and **you** fail to pay a premium surcharge authorized by the California Earthquake Authority that is applicable to that earthquake policy.

If the cancellation is for non-payment of premium, **we** will mail **you** at least 10 days notice. If the cancellation is for any other reason, **we** will mail **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed to be proof of notice. Coverage under this policy will terminate on the date and time stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** don't intend to continue or renew the policy, **we** will mail **you** notice at least 45 days before the end of the premium period. **Our** mailing the notice of non-renewal to **you** will be deemed to be proof of notice.

II.      Under Section I—"Conditions", item 17., "Property Insurance Adjustment", is replaced by the following:

17.      **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for "Coverage A - Dwelling Protection" will be revised at each policy anniversary to reflect the rate of change in the replacement cost of **your dwelling** as identified on the Policy Declarations.

The limit of liability for "Coverage A - Dwelling Protection" for the succeeding premium period will be determined by changing the existing limit in proportion to the changes in the replacement cost of **your dwelling** between the time the existing limit was established and the time the changes were made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for "Coverage A - Dwelling Protection" will result in an adjustment in the limit of liability for "Coverage B - Other Structures Protection" and "Coverage C - Personal Property Protection" in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

Page 2

**Allstate** has the right to change to another replacement cost condition or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

III.    Under Section II—"Family Liability and Guest Medical Protection", item 15. under "Losses We Do Not Cover Under Coverage X" of Coverage X—"Family Liability Protection" is replaced by the following:

15.    **We** do not cover any liability an **insured person** assumes under any contract or agreement. **We** will not cover any contract or agreement in connection with a **business** of an **insured person** or any loss assessments levied against an **insured person** by an association of dwelling owners of which the **insured person** is a member.

Page 3

## Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

### Amendment of Policy Provisions — AP425

This endorsement amends all of the following Allstate Insurance Company and Allstate Indemnity Company policies: Standard Mobilehome, Deluxe Mobilehome, Farmer's Comprehensive Personal Liability, Comprehensive Personal Liability, Residential Fire, Basic Homeowners, Standard Homeowners, Deluxe Homeowners, Deluxe Plus Homeowners, Deluxe Select Value Homeowners, Standard Select Value Homeowners, Deluxe Country Homeowners, Renters, Landlord Package Policy, Condominium Owners, Boatowners, and Recreational Package Policy. This endorsement is in addition to all other endorsements which apply to these policies.

It is agreed that the following changes are made to the **General** provisions:

A.  The following provision is added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

B.  Under the provision titled **Cancellation**, the following is added:

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## LENDER'S LOSS PAYABLE ENDORSEMENT — AU319 (10-78)

1.  Loss or damage, if any, under this policy shall be paid, as provided in this Endorsement, to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2.  The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3.  In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4.  Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

Page 1

5.    If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6.    This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7.    This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8.    Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9.    All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the first page of the policy.

Approved:
  Board of Fire Underwriters of the Pacific,
California Bankers' Association,
            Committee on Insurance.

Page 2

P(HO)-0051
**PAGE 90**

<div style="border: 1px solid black;">

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

</div>

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## CALIFORNIA STANDARD FIRE POLICY PROVISIONS — AP1862-1

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

**In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations** (or specified in endorsement attached thereto), **Allstate, for the term shown in the Declarations from inception date shown in the Declarations until canceled or expiration** at location of property involved, to an amount not exceeding the limit of liability specified, does insure **the Insured named in the Declarations** and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of Allstate.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

**Concealment, fraud**

This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

Page 1

**Uninsurable and excepted property**

This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included**

This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that the fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other insurance**

Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance**

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

**Other perils or subjects**

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions**

The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy or by statute is subject to change.

Page 2

**Waiver provisions**

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of policy**

This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this Company by giving to the insured a 20 (twenty) days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. If the reason for the cancellation is nonpayment of premium or fraud, this policy may be canceled by this Company by giving to the insured a 10 (ten) days' written notice of cancellation.

**Mortgagee interests and obligations**

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, the interest in this policy may be canceled by giving to the mortgagee a 10 days' written notice of cancellation.

If the insured fails to render proof of loss the mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of the mortgagee may be added hereto by agreement in writing.

**Pro rata liability**

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

**Requirements in case loss occurs**

The insured shall give written notice to this Company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each

Page 3

item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded
from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

Appraisal

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this Company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this Company mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this Company but shall not be compelled.

Adjusters

Page 4

If, within a six-month period, the Company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

### Company's options

It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

### Abandonment

There can be no abandonment to this Company of any property.

### When loss payable

The amount of loss for which this Company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this company of an award as herein provided.

### Suit

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.

### Subrogation

This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

Page 5

# EXHIBIT B

*Pomes Ins Serv Inc*
*9160 Las Tunas*
*Temple City CA 91780*

**Your Quick Insurance Check**

✓ Verify the information listed in the Policy Declarations.
✓ Please call if you have any questions.
✓ Now you can pay your premium before your bill is issued - visit allstate.com or call 1-800-Allstate®.

Artemio Melendez
9913 Mission Blvd
Riverside CA 92509-2560

**A new policy period is about to begin. Here are your renewal materials.**

We're pleased to once again offer you the opportunity to continue your policy for another year. Your Allstate Insurance Company Landlords Package policy is just one of an array of products we offer to meet a wide variety of insurance needs, and we appreciate your business.

**Your policy documents are inside.**

You'll find listed on the enclosed Policy Declarations your coverages, limits, deductibles, premiums, and any discounts you may have. As you read these materials, it would be a good idea to consider whether anything needs updating. We'd be happy to help you make sure that your insurance stays current with any changes in your life.

*(over)*

PROP *0100004070409530815708801*                    000000904688081  072    010    CA

Information as of
April 9, 2007

RP254-1

**Renewing your policy is easy.**
Here's what will happen and what you'll need to do before the beginning of your next policy period.

- Please carefully check your Policy Declarations to make sure it accurately reflects your information and the choices you've made. Get in touch with your agent right away if there's anything you'd like to change.
- Keep an eye out for your bill, which will include information on payment options.
- If you're paying your premium using the Allstate Easy Pay Plan, you will not receive a bill. Instead, we'll send you a statement detailing your withdrawal schedule for the policy period.
- Carefully read all enclosed materials and store these documents with your other important papers. Keep in mind that the policy documents included may change each time you receive a renewal offer—please read them to make sure you know about any important information or changes related to your insurance.

**We're here to help you.**
Feel free to call your agent at (626) 286-7734. Or take advantage of the online services at *allstate.com,* where you can view account information or check claim status by registering at the Allstate Customer Care Center.

Remember, insurance is not only protection for today. It helps pave the way to a financially secure future.

We're glad you're with us.

*Edward M. Liddy*

Edward M. Liddy
President, Allstate Insurance Company

## Allstate Insurance Company

### RENEWAL

# Landlords Package
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>Artemio Melendez<br>9913 Mission Blvd<br>Riverside CA 92509-2560 | **YOUR ALLSTATE AGENT IS:**<br>Pornes Ins Serv Inc<br>9160 Las Tunas<br>Temple City CA 91780 | **CONTACT YOUR AGENT AT:**<br>(626) 286-7734 |
| **POLICY NUMBER**<br>9 04 688081 05/30 | **POLICY PERIOD**<br>Begins on May 30, 2007<br>at 12:01 a.m. Pacific Time<br>and continues until cancelled | **PREMIUM PERIOD**<br>May 30, 2007 to May 30, 2008<br>at 12:01 a.m. Pacific Time |

**LOCATION OF PROPERTY INSURED**
9915 Mission Blvd, Riverside, CA 92509-2560

**MORTGAGEE**
- COUNTRYWIDE HOME LOANS INC         ITS SCRS &/OR
  ASSIGNEES ATIMA
  PO BX 961206 Ftwx 22   Fort Worth TX 76161-0206         *Loan # 106041320*

## *Total Premium for the Premium Period*  *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $521.00 |
| **TOTAL** | **$521.00** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program established by the "Terrorism Risk Insurance Act" applies is $0.00.   **SEE THE ENCLOSED "POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337-1.**

# Allstate Insurance Company

Policy Number: **9 04 688081 05/30**       Your Agent:  **Pomes Ins Serv Inc  (626) 286-7734**
For Premium Period Beginning:    **May 30, 2007**

## POLICY COVERAGES AND LIMITS OF LIABILITY

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection<br> • $1,000  All Peril Deductible Applies | $115,000 | |
| Other Structures Protection<br> • $1,000  All Peril Deductible Applies | $11,500 | |
| Personal Property Protection<br> • $1,000  All Peril Deductible Applies | $5,750 | |
| Fair Rental Income Protection | Refer to Policy | |
| Liability Protection | $100,000 | each occurrence |
| Premises Medical Protection | $1,000 | each person |
| Fire Department Charges | $500 | |
| Building Codes | $11,500 | |

The limit of liability for this structure (Coverage A-Dwelling Protection) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

This policy does not cover earth movement including earthquake

You have elected not to purchase a CEA earthquake policy

## DISCOUNTS   Your premium reflects the following discounts on applicable coverage(s):
Protective Device                            5 %

## RATING INFORMATION
The dwelling is of Frame construction and is occupied by   1 family

P(LL)-0004
**PAGE 100**

# Allstate Insurance Company

Policy Number: **9 04 68808 1 05/30**     Your Agent:  **Pomes Ins Serv Inc (626) 286-7734**
For Premium Period Beginning:  **May 30, 2007**

## *Your Policy Documents*

Your Landlords Package policy consists of this Policy Declarations and the documents listed below.  Please keep these together.

- Landlords Package Policy form AP529
- LPP - Vandalism Coverage End. form AP266
- LPP - ACV Loss Settlement End. form AP493
- California Std Fire Policy Prov. End form AP1862-1
- Notice of Terrorism Insurance Cov. form AP3337-1

- California LPP Amendatory End. form AP1023-3
- LPP - Burglary Coverage End. form AP267
- Lender's Loss Payable Endorsement form AU319
- CA Landlords Pkg Policy Amend End form AP2305

## *Important Payment and Coverage Information*

Do not pay.  Mortgagee has been billed.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate.**

*Edward M. Liddy*
Edward M. Liddy
President

*Robert W. Pike*
Robert W. Pike
Secretary

# Allstate Landlords Package Policy

CALIFORNIA

Policy:

Effective:

Issued to:

Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company---Home Office: Northbrook, Illinois 60062

AP529

## Table of Contents

### General

Definitions Used In This Policy ..........................2
Insuring Agreement ...........................................4
Conformity to State Statutes ............................4
Coverage Changes .............................................4
Policy Transfer..................................................4
Continued Coverage After Your Death.............4
Cancellation and Non-Renewal ........................4
Concealment and Fraud.....................................5

### Section I — Your Property

### Coverage A
### Dwelling Protection

Property We Cover Under Coverage A ...........5
Property We Do Not Cover Under
   Coverage A.................................................5

### Coverage B
### Other Structures Protection

Property We Cover Under Coverage B ...........6
Property We Do Not Cover Under
   Coverage B.................................................6
Losses We Cover Under Coverages
   A and B......................................................6
Losses We Do Not Cover Under
   Coverages A and B .....................................6

### Coverage C
### Personal Property Protection

Property We Cover Under Coverage C ...........9
Property We Do Not Cover Under
   Coverage C.................................................9
Losses We Cover Under Coverage C..............10
Losses We Do Not Cover Under
   Coverage C................................................11

### Coverage D
### Fair Rental Income

We Will Cover Under Coverage D ..................12

### Section I — Additional Protection

Debris Removal...............................................13
Trees, Shrubs, Plants and Lawns..................13
Emergency Removal of Property....................13
Fire Department Charges ...............................13
Temporary Repairs After a Loss ...................13
Arson Reward..................................................13
Collapse ..........................................................13
Land.................................................................14

### Section I — Conditions

Deductible.......................................................14
Insurable Interest and Our Liability ...............14
What You Must Do After a Loss .....................14
Our Settlement Options..................................15
How We Pay For a Loss ..................................15
Our Settlement of Loss ..................................17
Appraisal.........................................................17
Abandoned Property .......................................17
Mortgagee ......................................................17
Permission Granted to You.............................18
Our Rights to Recover Payment .....................18
Our Rights to Obtain Salvage.........................18
Suit Against Us................................................18
Loss to a Pair or Set.......................................18
Glass Replacement..........................................19
No Benefit to Bailee .......................................19
Other Insurance..............................................19
Property Insurance Adjustment......................19

### Section II — Liability and Premises Medical Protection

### Coverage X
### Liability Protection

Losses We Cover Under Coverage X ..............19
Losses We Do Not Cover Under
   Coverage X ................................................20

### Coverage Y
### Premises Medical Protection

Losses We Cover Under Coverage Y .............22

Page 1

Losses We Do Not Cover Under
   Coverage Y.......................................22

**Section II — Additional Protection**

Claim Expense ........................................23
Emergency First Aid................................23

**Section II — Conditions**

What You Must Do After a Loss....................23
What an Injured Person Must Do —
   Coverage Y — Premises Medical
   Protection.......................................24
Our Payment of Loss — Coverage Y —
   Premises Medical Protection .................24
Our Limits of Liability...............................24
Bankruptcy.............................................24
Our Rights to Recover Payment —
   Coverage X — Liability Protection.............24
Suit Against Us ......................................24
Other Insurance — Coverage X —
   Liability Protection ............................25

**Section III — Optional Protection**

**Optional Coverages You May Buy**

Coverage BC
   Building Codes.................................25
Coverage F
   Fire Department Charges.....................25
Coverage G
   Loss Assessments............................25
Coverage SD
   Satellite Dish Antennas ......................26

# GENERAL

## *Definitions Used in This Policy*

1. "Allstate," "we," "us" or "our" — means the
   company named on the Policy Declarations.

2. "Bodily injury" — means physical harm to
   the body, including sickness, disability or

disease, and resulting death, except that
**bodily injury** does not include:
a)   any venereal disease;
b)   Herpes;
c)   Acquired Immune Deficiency Syndrome
     (AIDS);
d)   AIDS Related Complex (ARC);
e)   Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition,
disease or illness related to (a) through (e)
listed above.

Under **Coverage Y — Premises Medical
Protection, bodily injury** means physical
harm to the body, including sickness or
disease, except that **bodily injury** does not
include:
a)   any venereal disease;
b)   Herpes;
c)   Acquired Immune Deficiency Syndrome
     (AIDS);
d)   AIDS Related Complex (ARC);
e)   Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition,
disease or illness related to (a) through (e)
listed above.

3. "Building structure" — means a structure
   with walls and a roof.

4. "Business" — means any full- or part-time
   activity of any kind engaged in for economic
   gain including the use of any part of any
   premises for such purposes. However, the
   lawful rental or lease, or holding for rental or
   lease, of the residence premises will not be
   considered a business.

5. "Dwelling" — means a one-, two-, three- or
   four-family building structure which is used
   principally as a private residence and located
   at the address stated on the Policy
   Declarations.

6. "Insured person(s)" — means:
   a) if **you** are shown on the Policy Declarations as an individual and **you** are a sole proprietor, **you** and **your** resident spouse.
   b) if **you** are shown on the Policy Declarations as a partnership or joint venture, the named partnership or joint venture, including any of its partners or members individually while acting within the course and scope of their duties in connection with the ownership, maintenance or use of the **residence premises**.
   c) if **you** are shown on the Policy Declarations as an organization other than a partnership or joint venture, the organization directors, trustees or governors of the organization while acting within the course and scope of their duties in connection with the ownership, maintenance or use of the **residence premises**.
   d) **your** employees, while acting within the course and scope of their employment in connection with the ownership, maintenance or use of the **residence premises**.
   e) any person or organization while acting as **your** real estate manager for the **residence premises**.

   This policy does not apply to **bodily injury, personal injury** or **property damage** arising from the conduct of any partnership, joint venture or organization which is not named on the Policy Declarations as the insured.

7. "Occurrence" — means:
   a) under **Coverage X — Liability Protection**, an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury, personal injury** or **property damage** and arising from the ownership, maintenance or use of the **residence premises**.
   b) under **Coverage Y — Premises Medical Protection**, an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** and arising from the ownership, maintenance or use of the **residence premises**.

8. "Personal injury" — means damages resulting from:
   a) false arrest; false imprisonment; wrongful detention;
   b) wrongful entry; invasion of rights of occupancy; wrongful eviction;
   c) libel; slander; humiliation; defamation of character; invasion of rights of privacy.

9. "Property damage" — means physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction. **Property damage** does not include theft or conversion of property by an **insured person**.

10. "Rental Unit" — means that portion of **your dwelling** which forms separate living space intended for **tenant** occupancy.

11. "Residence premises" — means **your dwelling**, other structures and land located at the address stated on the Policy Declarations.

12. "Tenant" — means any person who rents, leases or lawfully occupies a rental **unit**.

13. "Vandalism" — means willful or malicious conduct resulting in damage or destruction of property. "Vandalism" does not include theft of property.

14. "You" or "your" — means the person(s), partnership, joint venture, or organization

Page 3

P(LL)-0009

**PAGE 105**

specifically named on the Policy Declarations as the insured.

## Insuring Agreement

In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due, comply with the policy terms and conditions, and inform us of any change in title or use of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon every other person defined as an **insured person**.

## Conformity to State Statutes

When a policy provision conflicts with the statutes of the state in which the **residence premises** is located, the provision is amended to conform to such statutes.

## Coverage Changes

When **Allstate** broadens coverage during the premium period without charge, **you** have the broadened coverage if **you** have purchased the coverage to which the changes apply. The broadened coverage applies on the date the coverage change is effective in **your** state. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. You agree to cooperate with **us** in determining if

this information is correct and complete. **You** agree that if this information changes or is incorrect or incomplete, we may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

## Policy Transfer

You may not transfer this policy to another person or organization without **our** written consent.

## Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:

1.  **Your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2.  An **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Cancellation and Non-Renewal

Your Right to Cancel:
You may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

Our Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

Page 4

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1. Non-payment of premium;

2. Fraud or material misrepresentation by **you** or **your** representative in obtaining the policy;

3. Fraud or material misrepresentation by **you** or **your** representative in presenting a claim under this policy;

4. Grossly negligent acts or omissions by **you** or **your** representative which substantially increase any of the hazards insured against;

5. You have been convicted of a crime and one of the elements of the crime was an act increasing any hazard **we** cover; or

6. Physical changes in the covered property occurring after the policy was issued or last renewed which make the property uninsurable.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any other reason, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed to be proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our Right Not to Renew or Continue:**
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** don't intend to continue or renew the policy, **we** will mail **you** notice at least 45 days before the end of the premium period. **Our** mailing the notice

of non-renewal to **you** will be deemed to be proof of notice.

### Concealment and Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or occurrence in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## Section I — Your Property

### Coverage A
### Dwelling Protection

#### Property We Cover Under Coverage A:

1. **Your dwelling**, including attached structures, at the **residence premises**. Fences, and structures connected to your **dwelling** by only a fence, utility line, or similar connection, are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

#### Property We Do Not Cover Under Coverage A:

1. Any structure or other property covered under **Coverage B — Other Structures Protection**.

2. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

Page 5

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

4. Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.

### Coverage B
### Other Structures Protection

#### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the **residence premises** for use in connection with structures, other than **your dwelling**, at the **residence premises**.

4. Wall-to-wall carpeting fastened to **building** structures other than **your dwelling**.

5. Fences at the **residence premises**, whether or not connected to **your dwelling**.

#### Property We Do Not Cover Under Coverage B:

1. Any structure or other property covered under Coverage A — Dwelling Protection.

2. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

3. Satellite dish antennas and their systems, whether or not attached to a **building** structure.

4. Construction materials and supplies at the **residence premises** for use in connection

with **your dwelling** or any structure not located at the **residence premises**.

### Losses We Cover Under Coverages A and B:
We will cover sudden and accidental direct physical loss to property described in Coverage A — Dwelling Protection and Coverage B — Other Structures Protection except as limited or excluded in this policy.

### Losses We Do Not Cover Under Coverages A and B:
We do not cover loss to the property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** when:
a) there are two or more causes of loss to the covered property; and
b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover Under Coverages A and B**.
We do not cover loss to property described in **Coverage A — Dwelling Protection** or Other Structures Protection consisting of or caused by:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through, any part of the **residence premises**.

Page 6

P(LL)-0012
**PAGE 108**

We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure of any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of, or at the direction of, an **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss caused by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

12. Collapse of a **building structure** or any part of a **building structure**, except as specifically provided in Section I — Additional Protection under item 7, "Collapse."

13. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

15. a) Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
   b) Mechanical breakdown;
   c) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

Page 7

P(LL)-0013
**PAGE 109**

d) Rust or other corrosion, mold, wet or dry rot;

e) Contamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;

f) Smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;

g) Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

h) Insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or

i) Seizure by government authority.

If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** or any **rental unit** in that **building structure** is vacant, unoccupied, or being constructed, unless **you** have used reasonable care to:

a) maintain heat in the **building structure** including all **rental units**; or

b) shut off the water supply and drain the system and appliances in the **building structure**.

17. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves and docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

b) from within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft or burglary.
However, we will cover damage to the exterior of covered **building structures** caused by the breaking in of a burglar or burglars if the **dwelling** is completed and has not been vacant or unoccupied for more than 90 consecutive days immediately prior to the loss. When we cover damage to the exterior of covered **building structures** caused by a burglar or burglars, we will also cover damage to interior surfaces of exterior doors and windows damaged by the break-in.

20. Vandalism. However, we do cover sudden and accidental direct physical loss caused by fire resulting from **vandalism** unless **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

21. Any act of a **tenant**, or guests of a **tenant**, unless the act results in sudden and accidental direct physical loss caused by:

Page 8

a) fire;
b) explosion;
c) vehicles;
d) smoke. However, we do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations;
e) increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring;
f) bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water;
g) water or steam that escapes, due to accidental discharge or overflow, from a plumbing, heating or air conditioning system, an automatic fire protection system, or a household appliance; or
h) freezing of a plumbing, heating or air conditioning system or a household appliance.

22. Weather conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

23. Planning, construction or maintenance, meaning faulty, inadequate or defective:
a) planning, zoning, development, surveying, siting;
b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c) materials used in repair, construction, renovation or remodeling; or
d) maintenance

of property whether on or off the **residence premises** by any person or organization.

## Coverage C
## Personal Property Protection

### Property We Cover Under Coverage C:
Personal property owned or used by an **insured person** which is rented or held for rental with the **residence premises**, or used for the service of the **residence premises**. Coverage applies only while the personal property is on the **residence premises**, or while it is temporarily removed for repairs.

### Property We Do Not Cover Under Coverage C:
1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories. **We** do, however, cover motorized land vehicles and their parts, equipment and accessories used solely for the service of the **residence premises** if not licensed for use on public roads.

4. Aircraft and aircraft parts.

5. Watercraft, including their trailers, furnishings, equipment and motors.

6. Outdoor signs.

7. Property of roomers, boarders or **tenants**.

8. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft.

Page 9

9.   Satellite dish antennas and their systems.

## Losses We Cover Under Coverage C:

We will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1.   Fire or lightning.

     However, we do not cover loss caused by fire resulting from **vandalism** if **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

2.   Windstorm or hail.

     We do not cover loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall.

3.   Explosion.

4.   Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5.   Aircraft, including self-propelled missiles and spacecraft.

6.   Vehicles.

7.   Smoke.

     We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8.   Falling objects.

     We do not cover loss to personal property inside a **building structure** unless the falling object first damages an exterior wall or roof of the **building structure**. Damage to the falling object itself is not covered.

9.   Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

10.  Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

11.  Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure on the residence premises**. This does not include damage to the glass.

12.  Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13.  Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

     We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed fro the removal of subsurface water which is drained from a foundation area of a structure.

14.  Freezing of a plumbing, heating or air conditioning system or a household appliance.

Page 10

We do not cover loss to any covered property in a **building structure** or any **rental unit** at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the **building structure** or any **rental unit** in that **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:

a)  maintain heat in the **building structure** including all **rental units**; or

b)  shut off the water supply and drain the system and appliances in the **building structure**.

### Losses We Do Not Cover Under Coverage C:

We do not cover loss to the property described in Coverage C — Personal Property Protection when:

a)  there are two or more causes of loss to the covered property; and

b)  the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover Under Coverage C**.

We do not cover loss to the property described in Coverage C — Personal Property Protection consisting of or caused by:

1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.  Water or any other substance that backs up through sewers or drains.

3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other

substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5.  Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water. We do cover sudden and accidental direct physical loss caused by fire, explosion, or breakage of glass or safety glazing materials resulting from earth movement.

6.  Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7.  The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8.  Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9.  Intentional or criminal acts of, or at the direction of, an **insured person**, if the loss that occurs:

a)  may be reasonably expected to result from such acts; or

P(LL)-0017

**PAGE 113**

b)    is the intended result of such acts.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss caused by fire, explosion or smoke.

We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

12. Any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
a)    lead in any form;
b)    asbestos in any form;
c)    radon in any form; or
d)    oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

13. Weather conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, construction or maintenance, meaning faulty, inadequate or defective:
a)    planning, zoning, development, surveying, siting;
b)    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c)    materials used in repair, construction, renovation or remodeling; or
d)    maintenance

of property whether on or off the residence premises by any person or organization.

## Coverage D
## Fair Rental Income

### We Will Cover Under Coverage D:

1.    **Your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover under **Coverage A — Dwelling Protection** makes a **rental unit** uninhabitable. **We** will pay for lost fair rental income for the shortest time required to either repair or replace the **rental unit**, but not to exceed 12 months from the date of the loss which made the **rental unit** uninhabitable.

2.    **Your** lost fair rental income, less charges and expenses which do not continue, for up to two weeks should civil authorities prohibit use of the **dwelling** due to a loss at a neighboring premises caused by a peril **we** insure against under this policy.

These periods of time are not limited by the termination of this policy.

This protection begins only after **you** have given **us** notice of the covered loss and only if, at the time of the loss, the **rental unit** was habitable and:
a)    occupied by a **tenant;** or
b)    **you** had a signed, written rental agreement for the **rental unit**, in which case this protection begins on the occupancy date specified in the rental agreement; or
c)    the **rental unit** was occupied by a **tenant** within 60 days of the loss and was in the process of being renovated.

We do not cover loss or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

Page 12

# Section I — Additional Protection

1. **Debris Removal**
   We will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

2. **Trees, Shrubs, Plants and Lawns**
   We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A — Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. We will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles, theft or collapse of a **building structure** or any part of a **building structure**.

   We will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**.

   We do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

3. **Emergency Removal of Property**
   We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from the **residence premises** because of danger from a loss we cover. Protection is limited to a 30-day period from the date of removal. This protection does not increase the limit of liability that applies to the covered property.

4. **Fire Department Charges**
   We will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss we cover at the **residence premises**. No deductible applies to this protection.

5. **Temporary Repairs After a Loss**
   We will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

6. **Arson Reward**
   We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

7. **Collapse**
   We will cover:
   a) the entire collapse of a covered **building structure**;
   b) the entire collapse of part of a covered **building structure**; and
   c) direct physical loss to covered property caused by (a) or (b) above.

   For coverage to apply, the collapse of a **building structure** specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
   a) a loss we cover under **Section I, Coverage C — Personal Property Protection**;

P(LL)-0019

b) hidden decay of the **building structure**;

c) hidden damage to the **building structure** caused by insects or vermin;

d) weight of persons, animals, equipment or contents;

e) weight of rain or snow which collects on a roof;

f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

We will not cover the collapse of underground septic tanks, fuel oil tanks, cesspools, cisterns or similar structures.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

8. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to **your dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of **your dwelling** sustaining the covered loss.

The Losses We Do Not Cover Under Coverages A and B reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

# Section I — Conditions

1. **Deductible**
We will pay when a covered loss exceeds the deductible shown on the Policy Declarations.

We will then pay only the excess amount, unless we have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
In the event of a covered loss, we will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After a Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:

a) promptly give **us** or **our** agent notice. Report any loss involving theft, **vandalism** or burglary to the police as soon as possible.

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine, and permit **us** to make copies.

e) produce records supporting any claim for loss of fair rental income as often as we reasonably require.

f) as often as we reasonably require:
1) show **us** the damaged property.
2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person**, and sign a transcript of the same.
3) produce representatives, employees, members of the insured's household or others to the

Page 14

extent it is within the insured person's power to do so; and

4) cooperate with us in the investigation or settlement of the claim, including providing available information concerning tenants; and

g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of the loss;

2) the interest insured persons and others have in the property, including any encumbrances;

3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4) any other insurance that may cover the loss;

5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;

6) at our request, the specifications of any damaged **building structure** or other structure.

4. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen covered property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen covered property as described in **Condition 5 "How We Pay For a Loss."**

Within 30 days after we receive **your** signed, sworn proof of loss, we will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For a Loss**

Under Coverage A — Dwelling Protection, Coverage B — Other Structures Protection and Coverage C — Personal Property Protection, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, without deduction for depreciation, is less than $2,500 and the property is not excluded from the Building Structure Reimbursement provision, or;

2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss. If applicable, **you** may make claim for additional payment as described in paragraph "c" and paragraph "d" below if **you** repair or replace the damaged,

Page 15

destroyed or stolen covered property within 180 days of the actual cash value payment.

c)  Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)  the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for the same use on the same premises;
2)  the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for the same use on the same premises; or
3)  the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure

or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2), or 3) above.

Building Structure Reimbursement will not apply to:
1)  property covered under **Coverage C — Personal Property Protection**;
2)  property covered under **Coverage B — Other Structures Protection** that is not a **building structure**;
3)  wall-to-wall carpeting, ceramic or vinyl floor coverings, hardwood floors, built-in appliances, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or
4)  land.

Payment under "a," "b," or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d)  Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash

Page 16

value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C —Personal Property Protection.**

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2), or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A —Dwelling Protection** or **Coverage B — Other Structures Protection;**
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) wall-to-wall carpeting.

6. **Our Settlement of Loss**
   We will settle any covered loss with **you** unless another payee is named in the policy.

We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, by an appraisal award, or by a court judgment.

7. **Appraisal**
   If **you** and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by the appraisers or an appraiser and the umpire will determine the amount of loss.

Each party will pay the appraiser it chooses and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
   **We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person.**

9. **Mortgagee**
   A covered loss will be payable to the mortgagees named on the Policy Declarations to the extent of their interest and in the order of precedence. All provisions of

Page 17

P(LL)-0023

Section I of this policy apply to these mortgagees.

We will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if we cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at our option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee, loss payee or other secured party.

10. **Permission Granted to You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant or unoccupied.

b) **You** may make alterations, additions or repairs, and you may complete structures under construction.

11. **Our Rights to Recover Payment**
When we pay for any loss, an **insured person's** rights to recover from anyone else become ours up to the amount we have paid. An **insured person** must protect these rights and help **us** enforce them.

**You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights to Obtain Salvage**
We have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

We will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When we settle any loss caused by theft or disappearance, we have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform us of any property recovered. We will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all the policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

14. **Loss to a Pair or Set**
If there is a covered loss to a pair or set, we may:

P(LL)-0024

**PAGE 120**

a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or

b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit to Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a covered loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

At **our** discretion, **we** may adjust the limit of liability shown on the Policy Declarations for **Coverage A — Dwelling Protection** at each policy anniversary to reflect a change in the estimated replacement cost of **your dwelling**, including attached structures, as determined by the method identified on the Policy Declarations. Any revision to the limit of liability for **Coverage A — Dwelling Protection** may, at **our** discretion, be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B — Other Structures**

Protection and **Coverage C — Personal Property Protection** in accordance with the Allstate manual of rules and rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on the premium rates in use by Allstate at the time a change in limits is made.

Allstate has the right to withdraw this condition or change the method of determining the estimated replacement cost of **your dwelling**, including attached structures, as of policy anniversary date by giving **you** at least 30 days notice.

# Section II — Liability Protection and Premises Medical Protection

### *Coverage X*
### *Liability Protection*

#### *Losses We Cover Under Coverage X:*
Subject to the terms, conditions and limitations of this policy, Allstate will pay compensatory damages which an **insured person** becomes legally obligated to pay because of **bodily injury**, **personal injury**, or property damage arising from a covered **occurrence**. We will not pay any punitive or exemplary damages, fines or penalties.

We may investigate or settle an claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, we will provide a defense with counsel of **our** choice. We are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

Page 19

*Losses We Do Not Cover Under Coverage X:*

1. We do not cover **bodily injury, personal injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an **insured person**. This exclusion applies even if:
   a) an **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury, personal injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury, personal injury,** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

2. We do not cover **bodily injury** or **personal injury** to an **insured person**.

3. We do not cover **property damage** to any:
   a) property owned by an **insured person**;
   b) property owned by others which an **insured person** agreed to insure or for which an **insured person** agreed to be responsible; or
   c) property rented to, occupied or used by, or in the care of an **insured person**.

4. We do not cover **bodily injury** or **personal injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers compensation law, non-occupational disability law, occupational disease law, disability benefits law, or any other similar law.

5. We do not cover **bodily injury, personal injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
   a) aircraft;
   b) watercraft; or
   c) motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

6. We do not cover **bodily injury, personal injury** or **property damage** arising out of the negligent supervision by an **insured person** of any person.

7. We do not cover any liability imposed on any **insured person** by any governmental authority arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
   a) aircraft;
   b) watercraft; or
   c) motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

8. We do not cover **bodily injury** or **personal injury** which results in any manner from any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

   However, we do cover **bodily injury** which results from the sudden and accidental discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

Page 20

9. We do not cover **property damage** consisting of or caused by any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

10. We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **personal injury** which results in any manner from, or for **property damage** consisting of or caused by, any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
    a) lead in any form;
    b) asbestos in any form;
    c) radon in any form; or
    d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

11. We do not cover any loss, cost or expense arising out of any request, demand, or order than any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
    a) lead in any form;
    b) asbestos in any form;
    c) radon in any form; or
    d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

12. We do not cover **bodily injury, personal injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person.**

13. We do not cover **bodily injury, personal injury** or **property damage** arising out of the past or present **business** activities of an insured person.

14. We do not cover **bodily injury, personal injury** or **property damage** arising out of any premises, other than the **residence premises,** owned, rented or controlled by an insured person.

15. We do not cover **bodily injury, personal injury** or **property damage** arising from any contract or agreement, whether written or oral. We will not cover any loss assessments levied against an **insured person** by an association of dwelling owners of which the **insured person** is a member.

16. We do not cover **bodily injury, personal injury** or **property damage** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

17. We do not cover **bodily injury, personal injury** or **property damage** for which an **insured person** may be held legally liable arising out of the sale, distribution, manufacture, service, use or gift of any alcoholic beverage(s) or any controlled or illegal substances.

18. We do not cover **personal injury** caused by a violation of a law or ordinance committed:
    a) by an **insured person;** or
    b) with an **insured person's** knowledge or consent.

19. We do not cover **personal injury** to any person if the **personal injury** arises from that person's employment by an **insured person.**

Page 21

20. We do not cover personal injury arising from the publication of libelous or defamatory remarks or from the utterance of slanderous or defamatory remarks:
   a) if the initial publication or utterance of the same or similar material by or on behalf of an insured person occurred prior to the effective date of this insurance.
   b) made by or at the direction of an insured person with awareness of the falsity of such remarks.

21. We do not cover personal injury arising from illegal discrimination.

### Coverage Y
### Premises Medical Protection

### Losses We Cover Under Coverage Y:
Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an occurrence resulting in bodily injury covered by this part of the policy.

Payment will be made only if bodily injury:
1. arises from a condition on the residence premises or immediately adjoining ways; or

2. arises from an occurrence for which indemnification is provided under Coverage X — Liability Protection of this policy.

### Losses We Do Not Cover Under Coverage Y:
1. We do not cover bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if:

   a) an insured person lacks the mental capacity to govern his or her conduct;
   b) such bodily injury is of a different kind or degree than intended or reasonably expected; or
   c) such bodily injury is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether an insured person is actually charged with, or convicted of, a crime.

2. We do not cover bodily injury to any person eligible to receive benefits required to be provided or voluntarily provided by an insured person under any workers compensation law, non-occupational disability law, occupational disease law, disability benefits law, or any other similar law.

3. We do not cover bodily injury arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
   a) aircraft;
   b) watercraft; or
   c) motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

4. We do not cover bodily injury arising out of the negligent supervision by an insured person of any person.

5. We do not cover any bodily injury to an insured person.

6. We do not cover bodily injury which results in any manner from any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
   a) lead in any form;
   b) asbestos in any form;

Page 22

c) radon in any form; or
d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

However, we do cover **bodily injury** which results from the sudden and accidental discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

7.  We do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

8.  We do not cover **bodily injury** to any person arising out of a professional service being conducted on the **residence** premises by any person.

9.  We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

10. We do not cover **bodily injury** to any person if the **bodily injury** arises from that person's employment by an **insured person**.

11. We do not cover **bodily injury**:
    a) to a tenant if the **bodily injury** occurs on the part of the **residence premises** rented from an **insured person**; or
    b) to an employee of a tenant if the **bodily injury** arises out of employment by the tenant.

12. We do not cover **bodily injury** to any person engaged it:
    a) maintenance or repair of the **residence premises**;
    b) alteration, demolition or new construction at the **residence premises**.

13. We do not cover **bodily injury** arising out of the sale, distribution, manufacture, service,

use or gift of any alcoholic beverage(s) or any controlled or illegal substances.

## Section II — Additional Protection

We will pay, in addition to the applicable limits of liability:

1.  **Claim Expense**
    We will pay:
    a) all costs we incur in the settlement of any claim or the defense of any suit against an **insured person**;
    b) interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy. Interest will be paid only on damages which do not exceed **our** limits of liability;
    c) premium on bonds required in any suit we defend; we will not pay bond premiums in an amount that is more than **our Coverage X — Liability Protection** limit of liability. We have no obligation to apply for or furnish bonds;
    d) Up to $150 per day for loss of wages and salary when we ask **you** to attend trials and hearings;
    e) any other reasonable expenses incurred by an **insured person** at **our** request.

2.  **Emergency First Aid**
    We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an **occurrence** involving **bodily injury** covered under this policy.

## Section II — Conditions

1.  **What You Must Do After a Loss**
    In the event of **bodily injury**, **personal injury** or **property damage**, **you** must do the following:

Page 23

a) Promptly notify **us** or our agent stating:
   1) **your** name and policy number;
   2) the date, the place and the circumstances of the loss;
   3) the name and address of anyone who might have a claim against an **insured person**;
   4) the names and addresses of any witnesses.
b) Promptly send **us** any legal papers relating to the loss.
c) At **our** request, an **insured person** will:
   1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
   2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
   3) attend any hearing or trial;
   4) assist **us** by collecting and giving evidence and obtaining witnesses.

Any **insured person** will not voluntarily pay any money, assume any obligations, or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. What an Injured Person Must Do — Coverage Y — Premises Medical Protection
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. Our Payment of Loss — Coverage Y — Premises Medical Protection
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. Our Limits of Liability
   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury**, personal **injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

   **Our** total liability under **Coverage Y — Premises Medical Protection** for all medical expenses payable for **bodily injury** to any one person shall not exceed the "each person" limit shown on the Policy Declarations.

5. Bankruptcy
   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. Our Rights to Recover Payment — Coverage X — Liability Protection
   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. Suit Against Us
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Coverage X — Liability**

Page 24

Protection until the obligation of an insured person to pay is finally determined either by judgment against the insured person after actual trial, or by written agreement of the insured person, injured person, and us.

c)  No one shall have any right to make us a party to a suit to determine the liability of an insured person.

8.  Other Insurance — Coverage X — Liability Protection
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# Section III — Optional Protection

## Optional Coverages You May Buy

The following optional coverages may supplement coverages found in Section I or Section II and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1.  Coverage BC
Building Codes
We will pay up to 10% of the amount of insurance on the Policy Declarations under Coverage A — Dwelling Protection to comply with local building codes after covered loss to your dwelling or when repair or replacement results in an increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of your dwelling.

2.  Coverage F
Fire Department Charges
The $500 limit applying to the fire department service charges under Section I — Additional Protection is increased to the amount shown on the Policy Declarations.

3.  Coverage G
Loss Assessments
If your ownership of your dwelling requires that you be a member of, and subject to the rules of, an association governing areas held in common by all building owners as members of the association, we will pay your share of any special assessment charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:

a)  sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss we cover under Section I of this policy; or

b)  bodily injury or property damage covered under Section II of this policy.

However, this optional coverage shall apply only to special assessments made as a result of covered losses occurring while this optional coverage is in force.

Any reduction or elimination of payment for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

Allstate will pay only when the assessment levied against the insured person, as a result of any one loss, for bodily injury or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to Section I of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to

Page 25

Sections I and II of this policy and the Section I and II Conditions, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

4.  Coverage SD
    Satellite Dish Antennas
    Coverage C — Personal Property Protection is extended to pay for sudden and accidental

direct physical loss to **your** satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C — Personal Property Protection.**

The amount of coverage is shown on the Policy Declarations.

Page 26

## Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

### Landlords Package Policy — Vandalism Coverage — AP266

For an additional premium and when **your** Policy Declarations lists this endorsement AP266 as being applicable, **your** Landlords Package Policy is amended as follows:

A. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, Losses We Do Not Cover Under Coverages A and B**, item 20 is replaced by the following:

   20. **Vandalism**, or loss caused by fire resulting from **vandalism, if your dwelling** is vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

B. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, Losses We Do Not Cover Under Coverages A and B**, the following is added to Item 21:

   i)   **vandalism**

C. Under **Coverage C — Personal Property Protection, Losses We Cover Under Coverage C**, the following item is added:

   **Vandalism**. However, **we** do not cover loss caused by **vandalism**, or loss caused by fire resulting from **vandalism**, if the **dwelling** is vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

D. Under **Section I Additional Protection**, item 2 (entitled "**Trees, Shrubs, Plants and Lawns**"), the last sentence of the first paragraph is replaced by the following:

   This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles, theft, **vandalism**, or collapse of a **building structure** or any part of the **building structure**.

7/95

P(LL)-0033

**PAGE 129**

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## Landlords Package Policy — Actual Cash Value Loss Settlement Endorsement — AP493

In **Section I Conditions**, item 5, **How We Pay For a Loss**, is replaced by the following:

5.   How We Pay For a Loss

Loss to property insured by this policy under Coverage A — Dwelling Protection, Coverage B — Other Structures Protection, and Coverage C — Personal Property Protection will be settled on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the smallest of:

a)   the actual cash value of the damaged, destroyed or stolen property at the time of loss;

b)   the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or

c)   the limit of liability applicable to the damaged, destroyed or stolen property.

6/95

## Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## CALIFORNIA STANDARD FIRE POLICY PROVISIONS — AP1862-1

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

   **In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations** (or specified in endorsement attached thereto), **Allstate, for the term shown in the Declarations from inception date shown in the Declarations until canceled or expiration** at location of property involved, to an amount not exceeding the limit of liability specified, does insure **the Insured named in the Declarations** and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

   Assignment of this policy shall not be valid except with the written consent of Allstate.

   This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

   **Concealment, fraud**

   This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

Page 1

**Uninsurable and excepted property**

This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included**

This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that the fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other insurance**

Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance**

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

**Other perils or subjects**

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions**

The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy or by statute is subject to change.

Page 2

**Waiver provisions**

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of policy**

This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this Company by giving to the insured a 20 (twenty) days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. If the reason for the cancellation is nonpayment of premium or fraud, this policy may be canceled by this Company by giving to the insured a 10 (ten) days' written notice of cancellation.

**Mortgagee interests and obligations**

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, the interest in this policy may be canceled by giving to the mortgagee a 10 days' written notice of cancellation.

If the insured fails to render proof of loss the mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of the mortgagee may be added hereto by agreement in writing.

**Pro rata liability**

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

**Requirements in case loss occurs**

The insured shall give written notice to this Company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each

Page 3

item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded
from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

### Appraisal

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this Company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this Company mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this Company but shall not be compelled.

### Adjusters

Page 4

If, within a six-month period, the Company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

**Company's options**

It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

**Abandonment**

There can be no abandonment to this Company of any property.

**When loss payable**

The amount of loss for which this Company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this company of an award as herein provided.

**Suit**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.

**Subrogation**

This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

**Page 5**

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE — AP3337-1

The federal "Terrorism Risk Insurance Act" (the federal Act), as extended on December 22, 2005, establishes a temporary federal Program (the federal Program) providing for a system of shared public and private compensation for certain insured commercial property and casualty losses resulting from "acts of terrorism," as defined in the federal Act.

The federal Act defines an "act of terrorism" as an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as a part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Your insurance coverage includes coverage for losses caused by "acts of terrorism" to which the federal Program applies. This coverage is subject to all other terms, conditions, limitations and exclusions of your policy.

**DISCLOSURE OF FEDERAL SHARE OF COMPENSATION FOR INSURED LOSSES**
Insured losses caused by "acts of terrorism" to which the federal Program applies would be partially reimbursed by the United States of America under a formula established by the federal Act. Under that formula, the United States of America pays 90 percent (85 percent in 2007) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**DISCLOSURE OF PREMIUM**
The portion of your annual premium that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program applies is $0.00.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## California
## Landlords Package Policy Amendatory Endorsement — AP1023-3

I.    In the **GENERAL** Section, the following changes are made:

A.    Item 14. in The **Definitions Used in This Policy** provision is replaced by the following:

14.    **"You"** or **"your"** — means the person(s), partnership, joint venture, or organization specifically named on the Policy Declarations as the insured.

B.    The **Cancellation and Non-Renewal** provision is replaced by the following:

**Cancellation and Non-Renewal**
**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date you wish to stop coverage.

**Our** Right to Cancel
Allstate may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, we may cancel this policy for any reason by giving **you** at least 20 days notice before the cancellation takes effect, however, if the reason for cancellation is nonpayment of premium or fraud, we may cancel this policy by giving you at least 10 days notice of cancellation.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1.    non-payment of premium;
2.    fraud or material misrepresentation by **you** or **your** representative in obtaining the policy;
3.    fraud or material misrepresentation by **you** or **your** representative in pursuing a claim under this policy;
4.    grossly negligent acts or omissions by **you** or **your** representative which substantially increase any of the hazards insured against;
5.    **you** have been convicted of a crime and one of the necessary elements of the crime was an act increasing any hazard insured against;
6.    physical changes in the insured property occurring after the policy was issued or last renewed which make the property uninsurable; or
7.    **you** have purchased an earthquake policy from the California Earthquake Authority, and you fail to pay a premium surcharge authorized by the California Earthquake Authority that is applicable to that earthquake policy.

Page 1

If the cancellation is for non-payment of premium, we will mail **you** at least 10 days notice. If the cancellation is for any other reason, we will mail **you** at least 30 days notice.

**Our** mailing the notice of cancellation to you will be deemed to be proof of notice. Coverage under this policy will terminate on the date and time stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** don't intend to renew or continue the policy, **we** will mail **you** notice at least 45 days before the end of the premium period. **Our** mailing the notice of non-renewal to **you** will be deemed to be proof of notice.

B.   The following provision is added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means that Allstate will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

II.   In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, provision 15d), is replaced by:

15.   d)   rust or other corrosion

III.   In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, the following is added:

24.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**.

IV.   In **Section I—Your Property**, under **Losses We Do Not Cover Under Coverage C**, the following is added:

15.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge,

Page 2

which may otherwise be covered by this policy, except as specifically provided in Section I, Conditions –Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

V.   In Section I Your Property, under Fair Rental Income, We Will Cover Under Coverage D, is replaced by the following:

We Will Cover Under Coverage D:

1.   Your lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss we cover under Coverage A—Dwelling Protection makes a rental unit uninhabitable. We will pay for lost fair rental income for the shortest time required to either repair or replace the rental unit, but not to exceed 12 months from the date of the loss which made the rental unit uninhabitable.

2.   Your lost fair rental income, less charges and expenses which do not continue, for up to two weeks should civil authorities prohibit use of the dwelling due to a loss at a neighboring premises caused by a peril we insure against under this policy.

However, payments for your lost fair rental income due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any payments paid or payable under Section I, Conditions –Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.

These periods of time are not limited by the termination of this policy.

This protection begins only after you have given us notice of the covered loss and only if, at the time of the loss, the rental unit was habitable and:

a)   occupied by a tenant; or
b)   you had a signed, written rental agreement for the rental unit, in which case this protection begins on the occupancy date specified in the rental agreement; or
c)   the rental unit was occupied by a tenant within 60 days of the loss and was in the process of being renovated.

We do not cover loss or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

VI.   In Section I—Conditions, under item 5, How We Pay For a Loss, the following changes are made:

A.   Sub-item b) Actual Cash Value is replaced by the following:

b)   Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss. If applicable, you may make claim for additional payment as described in paragraph "c" and paragraph "d" below, if you repair or replace the damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, if applicable you may make claim for additional payment as described in paragraph "c" and in

Page 3

paragraph " d" below, if applicable you repair or replace the damaged, destroyed or stolen covered property within 24 months of the actual cash value payment.

B.   Sub-item c) Building Structure Reimbursement is replaced by the following:

c)   Building Structure Reimbursement. Under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a " state of emergency," as defined in Section 8558 of the California Government Code, we will make additional payment under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection** to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 24 months of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property, under Losses We Do Not Cover Under Coverages A and B**, item 24.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)   the replacement cost of the part(s) of the **building structure**(s) for equivalent construction for similar use on the same premises;
2)   the amount actually and necessarily spent to repair or replace the damaged **building structure**(s) with equivalent construction for similar use on the same **residence premises**; or
3)   the limit of liability applicable to the **building structure**(s) as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, regardless of the number of the **building structures** and structures other than **building structures** involved in the loss.

If you replace the damaged **building structure**(s) at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2), or 3) above.

Building Structure Reimbursement will not apply to:
1)   property covered under **Coverage C—Personal Property Protection**;
2)   Property covered under **Coverage B—Other Structures Protection** that is not a **building structure**;
3)   wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or
4)   land. 

Page 4

Payment under "a", "b", or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

C.   The first paragraph in sub-item d) Personal Property Reimbursement is replaced by the following:

d)   Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C—Personal Property Protection**, we will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, we will make additional payment under **Coverage C— Personal Property Protection** to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property within 24 months of the actual cash value payment.

VII.   In **Section I—Conditions**, the following is added:

19.   **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**

In the event of a covered water loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection**, we will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under **Coverage A— Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** damaged by a covered water loss. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection**.

VIII.   In **Section II—Family Liability and Premises Medical Protection**, under **Losses We Do Not Cover Under Coverage X**, items 22 and 23 are added:

22.   **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

23.   **We** do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury, personal injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

IX.   In **Section II—Family Liability and Premises Medical Protection**, under **Losses We Do Not Cover Under Coverage Y**, item 14 is added:

14.   **We** do not cover **bodily injury** or **personal injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

All other policy terms and conditions apply.

Page 5

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## Landlords Package Policy — Burglary Coverage — AP267

For an additional premium and when **your** Policy Declarations lists this endorsement AP267 as being applicable, **your** Landlords Package Policy is amended as follows:

A.  Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, Losses We Do Not Cover Under Coverages A and B, item 19 is replaced by the following:

   19.  Theft
       However, we will cover loss caused by a burglar or burglars to property described in Coverage A — Dwelling Protection or Coverage B — Other Structures Protection, including the theft of property we cover under Coverage A or Coverage B by a burglar or burglars, if:

       a)  **your dwelling** is completed and has not been vacant or unoccupied for more than 90 consecutive days immediately prior to the loss; and

       b)  there is visible evidence of forcible entry to the exterior of the covered **building structure** caused by the breaking in of a burglar or burglars.

B.  The following is added to Coverage C — Personal Property Protection, Losses We Cover Under Coverage C:

   Burglary, including the theft of property we cover under Coverage C from within a covered **building structure** by a burglar or burglars, if:

   a)  **your dwelling** is completed and has not been vacant or unoccupied for more than 90 consecutive days immediately prior to the loss; and

   b)  there is visible evidence of forcible entry to the exterior of the covered **building structure** caused by the breaking in of a burglar or burglars.

7/95

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## LENDER'S LOSS PAYABLE ENDORSEMENT — AU319 (10-78)

1.   Loss or damage, if any, under this policy shall be paid, as provided in this Endorsement, to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as "the Lender," in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2.   The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3.   ' In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4.   Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

Page 1

P(LL)-0047

**PAGE 143**

5.    If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

6.    This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7.    This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8.    Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9.    All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the first page of the policy.

Approved:
    Board of Fire Underwriters of the Pacific,
    California Bankers' Association,
                Committee on Insurance.

P(LL)-0048

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## California
## Landlords Package Policy Amendatory Endorsement — AP2305

In the **General** section, the following provisions are added:

### What Law Will Apply
This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

### Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought,** shall impair any party's right to remove a state court lawsuit to a federal court.

All other policy terms and conditions apply.

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372.

On September 2, 2009, I served true copies of the following document(s) described as:

- **DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

on the interested parties in this action as follows:

Gregory D. Angus Esq.
4298 Orange Street
Riverside CA 92501
Tel: (951) 781-6555
Fax: (951) 781-6550

Attorney for Plaintiff Artemio Melendez

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Luce, Forward, Hamilton & Scripps LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers listed above. The telephone number of the sending facsimile machine was (619) 235-5389. No error was reported by the fax machine that I used.

☐ **BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 2, 2009, at San Diego, California.

_Cheryl Wiles_
Cheryl Wiles

101187008.1

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) ARTEMIO MELENDEZ, | DEFENDANTS ALLSTATE INSURANCE COMPANY, a Illinois corporation and DOES 1 through 100, inclusive |
|---|---|

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Gregory D. Angus, SBN 210327 4298 Orange Street Riverside CA 92501 Tel: (951) 781-6555 Fax: (951) 781-6550 | Attorneys (If Known) Peter H. Klee, SBN 111707 John D. Edson, SBN 185709 LUCE FORWARD HAMILTON & SCRIPPS LLP 600 West Broadway, Suite 2600 San Diego, CA 92101 (619) 236-1414 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** 600,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC Sec. 1441(b), 1446, Complaint for Breach of Contract; Insurance Bad Faith, Punitive Damages

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number:    ED CV 09 - 01694 SGL (OPX)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Cook County, Illinois | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *John Folser*   Date September 4, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen G. Larson and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## EDCV09- 1694 SGL (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [X] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.